

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-1997

# Donaldson v. Bernstein

Precedential or Non-Precedential:

Docket 96-3208

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Donaldson v. Bernstein" (1997). *1997 Decisions.* Paper 11.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/11

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 96-3208

—————————

DENNIS C. DONALDSON; MARION L. DONALDSON, his wife

v.

JOSEPH J. BERNSTEIN, ESQUIRE, TRUSTEE IN THE
CHAPTER 7 BANKRUPTCY ESTATE OF INSULFOAMS, INC.

DENNIS and MARION DONALDSON,

Appellants

—————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 95-01644)

—————————

Argued December 12, 1996

BEFORE:  GREENBERG, ALITO, and ROTH, Circuit Judges

(Filed: January 14, 1997)

—————————

Donald R. Calaiaro (argued)
Calaiaro, Corbett & Bower
1105 Grant Building
Pittsburgh, PA 15219

    Attorneys for Appellants

Charles E. Bobinis (argued)
Bernstein & Bernstein
1133 Penn Avenue
Pittsburgh, PA 15222

    Attorneys for Appellee

—————————

OPINION OF THE COURT

—————————

GREENBERG, Circuit Judge.


**I. FACTUAL AND PROCEDURAL HISTORY**


1

This case is before this court on appeal from an order of the district court entered April 1, 1996, which affirmed an order of the bankruptcy court entered July 19, 1995, for the reasons the bankruptcy court set forth in its opinion. Insulfoams, Inc., the debtor, was incorporated in Pennsylvania in 1979 and was in the business of installing insulation for commercial and industrial establishments. Defendants-appellants, Dennis and Marion Donaldson, were Insulfoams' only shareholders, directors and officers, and at least at one time, each owned half of its stock. Dennis was Insulfoams' President and chief executive officer and Marion was its chief financial officer. According to the Donaldsons, Marion resigned her office and sold her stock in Insulfoams on April 5, 1990. Br. at 15-16. The Donaldsons, however, did not disclose the resignation and sale until Dennis notified the Pennsylvania Department of State Corporations Bureau in May 1994. In its opinion following the trial, the bankruptcy court rejected the Donaldsons' contentions that Marion had resigned and thus treated her as an officer of Insulfoams at all times material to this action. In re Insulfoams, 184 B.R. 694, 706-07 (Bankr. W.D. Pa. 1995).

Insulfoams filed a voluntary Chapter 11 bankruptcy petition on April 24, 1989, and thereafter continued operations as a debtor-in-possession. On October 26, 1989, Insulfoams filed a disclosure statement and plan of reorganization. But, as the bankruptcy court explained in its opinion, the court required Insulfoams to file an amended disclosure statement indicating whether the Donaldsons would make a future cash infusion into

2

Insulfoams.  Insulfoams, 184 B.R. at 699.  Consequently, on December 28, 1989, Insulfoams filed an amended disclosure statement which stated that "if in any month of this Plan, the corporation is unable to afford the required monthly Plan payment the principals, Dennis and Marion Donaldson will guarantee that the payment is made by lowering their own salaries or by making a capital infusion into the corporation from their own resources."  Supp. app. at 101.

The bankruptcy court approved the amended disclosure statement on April 12, 1990, and confirmed Insulfoams' plan of reorganization on May 24, 1990.  The plan required Insulfoams to pay its tax liabilities to the Internal Revenue Service ($29,893) and the State of Pennsylvania ($6,346.74) in full, with interest, over the first 20 months of the plan.  Supp. app. at 85.  The Donaldsons were personally liable for these taxes.  The plan further provided that Insulfoams would pay the unsecured creditors' claims (totaling $284,250) 30 cents on the dollar in monthly payments running from the 21st month to the 72nd month of the plan.  Id.  The court issued a final decree on April 2, 1991, after Insulfoams represented that the plan had been substantially consummated, and the clerk of the bankruptcy court closed the case six months later on October 2, 1991.

On September 29, 1992, Insulfoams' largest unsecured creditor filed a motion to compel it to make payments according to the plan, alleging that Insulfoams had not made any payments to the unsecured creditors after completing the payments to the IRS and the State of Pennsylvania.  Insulfoams admitted the

3

allegations, but claimed that adverse business conditions caused it to miss the payments and indicated that it would meet its plan obligations by December 15, 1992. In these circumstances, the bankruptcy court postponed a hearing on the creditor's motion until December 15, 1992, but at that time it found that Insulfoams would not be able to make the required payments. Consequently, the bankruptcy court reopened the case pursuant to 11 U.S.C. § 350(b) and converted it to a Chapter 7 proceeding pursuant to 11 U.S.C. § 1112(b)(8).

The court appointed a trustee for Insulfoams on December 22, 1992. On July 31, 1994, the trustee brought this adversary proceeding in the bankruptcy court against the Donaldsons, alleging that they obtained confirmation of the reorganization plan under false pretenses, knowing that they would not fund the plan after they paid the tax debts for which they were personally liable. The trustee further charged that the Donaldsons breached their fiduciary duties to Insulfoams by diverting business opportunities from it to Hi-Tech Contractors, Inc., another company they owned, for their personal benefit. The trustee sought compensatory and punitive damages against the Donaldsons.

The evidence at the trial showed that Hi-Tech was founded in the mid-1980s and that Dennis Donaldson was its principal. Hi-Tech was in the business of removing asbestos and other hazardous materials, for which it, unlike Insulfoams, was properly licensed and insured. Insulfoams and Hi-Tech leased adjoining space in a building the Donaldsons owned and often used

4

the same employees and equipment.  In 1992, Insulfoams had seven contracts (totaling $181,098.69) for the removal of asbestos and other hazardous materials which it subcontracted to Hi-Tech. Insulfoams received $12,047.01 of the profits from these contracts, while Hi-Tech received $29,672.62.  Insulfoams, 184 B.R. at 702.  In the circumstances, the bankruptcy court found that the Donaldsons breached their fiduciary duties by diverting business to Hi-Tech from Insulfoams, and it awarded the trustee $29,672.62 in compensatory damages (the full amount of Hi-Tech's profit on the seven contracts) and $55,602.38 in punitive damages.  The court calculated the total judgment of $85,275 to fund fully 30% of the claims of the unsecured creditors as provided in the plan.  Insulfoams, 184 B.R. at 709.  The Donaldsons appealed to the district court, which affirmed, and they then appealed to this court.

## II. DISCUSSION

### A. Standard of Review

Inasmuch as the district court sits as an appellate court in bankruptcy proceedings, we exercise plenary review of its decision.  In re Swedeland Dev. Group, Inc., 16 F.3d 552, 559 (3d Cir. 1994) (in banc).  We, in turn, review the bankruptcy court's opinion under a clearly erroneous standard for findings of fact and under a de novo standard for conclusions of law.  In re Sharon Steel Corp., 871 F.2d 1217, 1222-23 (3d Cir. 1989).  We review a bankruptcy court's decision whether to reopen a case pursuant to 11 U.S.C. § 350(b) on an abuse of discretion

5

standard.  Matter of Case, 937 F.2d 1014, 1018 (5th Cir. 1991);
In re Rosinski, 759 F.2d 539, 540-41 (6th Cir. 1985).


                    B.  Subject Matter Jurisdiction

          The Donaldsons argue that the bankruptcy court did not
have subject matter jurisdiction because prior to the
commencement of these adversary proceedings the court closed the
case after a final decree.  The bankruptcy court, however, did
more than entertain this adversary proceeding.  Rather, before
the trustee instituted these proceedings, the court reopened the
case pursuant to 11 U.S.C. § 350(b) and converted it to a Chapter
7 case pursuant to 11 U.S.C. § 1112(b)(8).  Only then did it
appoint the trustee.  Section 350(b) provides that "[a] case may
be reopened in the court in which such case was closed to
administer assets, to accord relief to the debtor, or for other
cause."  Here, the court reopened the case "for other cause,"
namely the Donaldsons' material default with respect to
implementing the plan of reorganization, a basis to convert a
post-confirmation Chapter 11 case to a Chapter 7 case under 11
U.S.C. § 1112(b)(8).  While no party sought the reopening, 11
U.S.C. § 105(a) empowered the bankruptcy court to reopen the case
on its own motion.  See In re Doty, 129 B.R. 571, 579-80 (Bankr.
N.D. Ind. 1991).  Clearly, in view of Insulfoams' failure to make
payments to the unsecured creditors as the plan required, the
court did not abuse its discretion in taking that action and
converting the Chapter 11 case to a Chapter 7 case.  Thus, we
reject any contention that the bankruptcy court lacked

                               6

jurisdiction on the ground that it was acting in a closed case.

The Donaldsons, however, expand on their subject matter jurisdiction argument as they contend that the confirmation of the plan in itself, an act distinct from closing the Chapter 11 case, eliminated the bankruptcy court's jurisdiction to entertain this proceeding. In this regard, they point out that the trustee essentially bases this adversary proceeding on state law claims. Furthermore, they note that this proceeding deals mainly with events in 1992, two and a half years after the bankruptcy court approved the reorganization plan and that the events even took place after the bankruptcy court closed the case on October 2, 1991. The Donaldsons observe that there is a division of authority with respect to the scope of a bankruptcy court's jurisdiction following confirmation of a plan. Thus, some courts have ruled that jurisdiction exists after confirmation of a plan only for those matters expressly reserved by the confirmation. See, e.g., In re Johns-Manville Corp., 7 F.3d 32, 34 (2d Cir. 1993). Other courts have held that jurisdiction extends to proceedings designed to interpret, enforce or aid the operation of the reorganization plan. See, e.g., In re Erie Hilton Joint Venture, 137 B.R. 165, 170 (Bankr. W.D. Pa. 1992).

We, however, need not decide the general scope of a bankruptcy court's jurisdiction following the confirmation of a plan, for at a minimum it would have jurisdiction over a case otherwise within its jurisdiction under 28 U.S.C. § 1334 if, as here, the court has reopened a case after confirmation and converted it to a Chapter 7 case. See Walnut Assocs. v. Saidel,

7

164 B.R. 487, 493-94 (E.D. Pa. 1994) (holding that reopening closed case was necessary for bankruptcy court jurisdiction). Thus, we conclude that the status of the case in the bankruptcy court did not preclude the court from exercising jurisdiction in these adversary proceedings either on the ground that the court had confirmed a plan of reorganization or had closed the case.

We consider then the extent of a bankruptcy court's jurisdiction under 28 U.S.C. § 1334. The fact that we have concluded a court has not lost its jurisdiction here because of the case's procedural posture does not mean that the court can entertain any matter tendered to it. Rather, a bankruptcy court can act only in cases and proceedings within its jurisdiction. Bankruptcy courts have original jurisdiction over: (1) cases under Title 11; (2) proceedings arising under Title 11; (3) proceedings arising in a case under Title 11; and (4) proceedings related to a case under Title 11. 28 U.S.C. § 1334. A case under Title 11 is the bankruptcy petition itself, a basis for jurisdiction clearly not applicable here. A proceeding fitting within any of the three remaining categories is within the bankruptcy court's jurisdiction and, since the third category is the broadest, a court "need only determine 'whether a matter is at least related to the bankruptcy.'" In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991) (citations omitted). A proceeding is "related to" the bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the

8

estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984).[1]

Some courts have held that the act of confirmation changes the above test to mean "significantly affect consummation of the plan as confirmed." In re Haws, 158 B.R. 965, 970 (Bankr. S.D. Tex. 1993); see also Warren v. Calania Corp., 178 B.R. 279, 282 (M.D. Fla. 1995). In Haws, the court found it did not have subject matter jurisdiction for a post-confirmation adversary proceeding based on state law claims because the proceeding did not involve construction or interpretation of the plan and any damages awarded were not necessary to ensure funding of the plan. 178 B.R. at 971. The court found that the mere fact that the trustee brought the proceeding on behalf of a group of creditors did not make the proceeding sufficiently "related to" bankruptcy for the court to exercise jurisdiction. Id. Other cases have held that the possibility of recovering damages which could be used to fund a plan is also an inadequate basis to provide jurisdiction. See Warren, 178 B.R. at 282; In re H & L Developers, Inc., 178 B.R. 71, 76 (Bankr. E.D. Pa. 1994); In re Transamerica Natural Gas Corp., 127 B.R. 800 (S.D. Tex. 1991).

This proceeding, however, is different in several respects from these cases limiting a bankruptcy court's jurisdiction. First, this proceeding has a much closer nexus to

1. The Supreme Court effectively has overruled Pacor with respect to the holding in Pacor that the prohibition against review of a remand order in 28 U.S.C. § 1447(d) is not applicable in a bankruptcy case. See Things Remembered, Inc. v. Petrarca, 116 S.Ct. 494 (1995). Things Remembered, however, does not disturb the authority of Pacor on the point for which we cite it.

9

the bankruptcy case than the proceedings in Haws, Warren, H & L, and Transamerica. Although the trustee bases his claims on state law allegations of breach of fiduciary duty, he is arguing that the Donaldsons violated their fiduciary duties to the unsecured creditors by diverting business from Insulfoams and not funding the reorganization plan. Therefore, even though the bankruptcy court converted the bankruptcy to a Chapter 7 case, the trustee basically is seeking to carry out the intent of the reorganization plan. Thus, this case, unlike Haws, Warren, H & L, and Transamerica, does not involve a dispute essentially collateral to the bankruptcy case. Rather, this action implicates the integrity of the bankruptcy process, as the Donaldsons' actions impaired Insulfoams' ability to make the payments required under the plan. In this regard we point out that it has been held that "misconduct during the bankruptcy proceeding" by the debtor often compels the court to allow the fraud to be redressed. See In re Emmer Bros. Co., 52 B.R. 385, 394-95 (D. Minn. 1985).

Furthermore, it has been held that if there is a sufficient nexus, a bankruptcy court can exercise subject matter jurisdiction over a related state law matter by reopening a closed bankruptcy case. See In re Burch, 88 B.R. 686, 690 (Bankr. E.D. Pa. 1988). Significantly, unlike in Haws, 158 B.R. at 967, the court in this case did not reopen the bankruptcy case merely to entertain an adversary proceeding. Indeed, as far as we can ascertain, the court did not even consider the possibility of a trustee bringing this proceeding when it reopened the case,

10

though we do not predicate our result on our belief in this regard. Rather, the court reopened the case and converted it to a Chapter 7 case because of Insulfoams' material default under the plan. We conclude, however, that the adversary proceeding brought at this stage of the case satisfies the requirements of section 1334 because it relates back to the effectuation of the Chapter 11 proceeding. We are satisfied, therefore, that the bankruptcy court had jurisdiction over it.

In reaching our result on the jurisdictional issues we have not lost sight of the theme which recurs in the reported opinions that the jurisdiction of the bankruptcy courts must be confined within appropriate limits and does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case. We are in full accord with that approach and indeed have expressed similar reservations regarding a bankruptcy court's jurisdiction in other contexts. See Beard v. Braunstein, 914 F.2d 434, 442-45 (3d Cir. 1990). Yet we recognize, as the Court of Appeals for the Fifth Circuit has set forth, that in an "analysis of the impact of a confirmed plan of reorganization upon a subsequent conversion to Chapter 7 . . . much depends on procedural nuances." Matter of Pavlovich, 952 F.2d 114, 116 (5th Cir. 1992). Here we are satisfied for the reasons we have expressed that the bankruptcy court had jurisdiction in these proceedings. We predicate our conclusion, however, on the unusual "procedural nuances" here so our opinion should not be used as authority in circumstances in which it

11

cannot be applied reasonably. Different "nuances" might bring a different conclusion.

## C. The Trustee's Standing

The Donaldsons also argue that the trustee does not have standing to bring this action. They claim that the conversion to Chapter 7 gave the trustee power only over Insulfoams' pre-confirmation estate. They support this argument by citing In re T.S. Note Co. TFC, 140 B.R. 812, 813-14 (Bankr. D. Kan. 1992), in which the court indicated that new filings were necessary to deal with post-confirmation entities and assets. We reject the Donaldsons' reading of T.S. Note. The court there said that all parties "are bound by the terms of the plan," and "entities . . . acquiring rights in good faith reliance on the confirmation order are to be protected." T.S. Note, 140 B.R. at 814. Furthermore, the "[t]erms of the plan discharge pre-confirmation debt and substitute the obligations set forth in the plan." In re H.R.P. Auto Ctr., Inc., 130 B.R. 247, 256 (Bankr. N.D. Ohio 1991). Here, unlike in T.S. Note, which dealt with a simple default under a plan and the likely inability of the debtors to complete the plan as confirmed, the trustee based his claim against the Donaldson on their breach of their fiduciary duties to Insulfoams and thus to its creditors under the plan, a circumstance not present in T.S. Note. Accordingly, even though this case has been converted to a Chapter 7 case, the trustee is attempting to satisfy Insulfoams' obligations under the plan. Indeed, the bankruptcy court formulated its judgment to that end.

12

Thus, the circumstances here are distinguishable from those in
T.S. Note.  The Donaldsons also cite In re Jartran, Inc., 886
F.2d 859 (7th Cir. 1989), but that case is distinguishable as it
deals with administrative expense priority, not post-confirmation
assets or claims.

We find, moreover, that the trustee is the proper party
to bring this action.  The Donaldsons admit that the creditors
would have standing to bring this claim.[2]  Br. at 22.  The
trustee, as the appointed representative of the creditors, is
empowered by the bankruptcy court to represent their interests.
"Property of the bankrupt remains in custodia legis in the
bankruptcy court during the period . . . after the discharge of
the trustee . . . remain[ing] dormant, in the estate, until the
bankruptcy court again appoints a trustee as enforcing guardian."
 Stein v. United Artists Corp., 691 F.2d 885, 893 (9th Cir. 1982)
(holding that controlling shareholder of post-confirmation debtor
could not pursue unlisted pre-confirmation claim on behalf of
creditors).[3]

## D. Res Judicata

2.      The bankruptcy court found that under Pennsylvania law
creditors of an insolvent corporation have standing to sue the
directors and the trustee has standing as their representative.
In re Insulfoams, 184 B.R. at 704-05.  See Branch v. Kaiser, 140
A. 498, 499-51 (Pa. 1928); West v. Hotel Pennsylvania, 25 A.2d
593, 595 (Pa. Super. Ct. 1942).  The Donaldsons do not challenge
this holding.  Instead they argue that the trustee does not have
standing as a matter of bankruptcy law.

3.      The court decided Stein under the Bankruptcy Act of 1898
rather than under the current Bankruptcy Code, Stein, 691 F.2d
885, 888 n.1, but the principles in that case remain applicable.

The Donaldsons contend that the res judicata effect of the confirmation of the plan bars the trustee's action. It is true that "a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation." In re Szostek, 886 F.2d 1405, 1408 (3d Cir. 1989). The Donaldsons, however, base their argument on their misconception that the trustee predicated his claim on pre-confirmation activity. See br. at 17-20. The bankruptcy court found, and we agree, that the Donaldsons' "liability is not based upon the above alleged [pre-confirmation] false pretenses. The gravamen of the trustee's complaint is that [the Donaldsons] breached their fiduciary duty after [Insulfoams'] plan was confirmed by failing to comply with [the plan] and by diverting [Insulfoams'] business opportunities to Hi-Tech."[4] In re Insulfoams, 184 B.R. at 705.

Claims for post-confirmation acts are not barred by the res judicata effect of the confirmation order. In Matter of Pavlovich, 952 F.2d 114, a Chapter 11 case converted to a Chapter 7 case after plan confirmation, the court held that res judicata did not bar claims of creditors "victimized by post-confirmation acts" of the debtors.[5] Id. at 119. "Creditors whose claims

4. While it is true that the bankruptcy court did consider some pre-confirmation acts in deciding the damage award, it did so only for purposes of ascertaining the Donaldsons' motive and demonstrating a pattern of activity, not for establishing liability. Further, those acts could not have been considered at the confirmation hearing because they did not ripen into a cause of action until the Donaldsons' later breach of fiduciary duty.

5. The claims in question were to revoke the debtor's discharge, not state law claims of breach of fiduciary duty as we have here.

14

arise from and after confirmation are not barred by the event of confirmation from asserting such claims, except to the extent that they arise from pre-confirmation acts." Id. That situation exists here as we are dealing with post-confirmation conduct. Another court, in denying a motion to revoke confirmation, was careful to point out that res judicata would not bar a common law action for damages for fraud "where the alleged fraud could not have been asserted in the bankruptcy proceedings, the underlying factual claims were not actually adjudicated, and the relief sought would not upset the confirmed plan of arrangement." Matter of Newport Harbor Assocs., 589 F.2d 20, 24 (1st Cir. 1978). These circumstances also are present here. The Donaldsons undertook their wrongful conduct after confirmation and it would not be reasonable to hold that when the court confirmed the plan the creditors should have objected on the basis of the fraud which had not as yet harmed them. Thus, the trustee's claim could not have been asserted before confirmation and the relief granted here by the bankruptcy court furthers rather than upsets the intent of the plan.

### E. Marion Donaldson's Liability

The Donaldsons contend that there is no evidence showing that Marion had a fiduciary duty to Insulfoams and thus to its creditors and therefore we should reverse the bankruptcy court's finding that she had such a duty as clearly erroneous. The bankruptcy court held that the Donaldsons were judicially estopped from asserting that Marion had terminated her

15

relationship with Insulfoams on April 5, 1990, because they did not disclose the alleged resignation when the court approved the plan of reorganization. Thus, both the court and the creditors relied on the representations in the amended disclosure statement that Dennis and Marion Donaldson were running Insulfoams and would guarantee the payments due under the plan. 184 B.R. at 706. The court also found that the Donaldsons' claim that Marion had terminated her involvement with Insulfoams was not credible and that she had not resigned as she claimed. Id. at 706-07.

Insulfoams' amended disclosure statement indicated that Marion Donaldson was the "primary bookkeeper and financial organizer of the business." Furthermore, the statement discussed her salary for 1990 and included her as a guarantor of plan payments. Supp. app. at 101. The bankruptcy court approved the amended disclosure statement after a hearing on April 12, 1990, one week after Marion now claims she resigned from Insulfoams. This resignation was not disclosed at the hearing nor at any time until 1994. The bankruptcy court relied on these statements in the amended disclosure statement in approving it as well as the reorganization plan.

When a party asserts a position inconsistent with a position taken in a previous proceeding, the doctrine of judicial estoppel is implicated. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir.), cert. denied, 488 U.S. 967, 109 S.Ct. 495 (1988). Judicial estoppel looks to the relationship between the litigant and the court. Id. It prevents a party from "playing fast and loose with the court" by

using "intentional self-contradiction . . . as a means of obtaining unfair advantage." Scarano v. Central R.R. Co., 203 F.2d 510, 513 (3d Cir. 1953). See also Murray v. Silberstein, 882 F.2d 61, 66 (3d Cir. 1989). With respect to the situation here, even if we assume that a bankruptcy disclosure statement is not enforceable as a contract, it is at least a representation which in appropriate circumstances can serve as the basis for judicial estoppel. See In re Bridgepoint Nurseries, Inc., 190 B.R. 215, 223-24 (Bankr. D.N.J. 1996). While we recognize that Marion claims she never read the disclosure statement, and claims that the attorney who prepared it had no authority to give her guaranty, she was served with a copy of the disclosure statement and had every opportunity to examine it.

Nevertheless, Marion did not reveal her alleged 1990 resignation during the confirmation proceedings. Yet surely she had an obligation to disclose her resignation to the bankruptcy court, if she in fact had resigned, before the court approved the amended disclosure statement inasmuch as she was an officer in Insulfoams from the time it filed its Chapter 11 petition on April 24, 1989, at least until the date of her purported resignation on April 5, 1990. Thus, she was an officer and shareholder of Insulfoams when it filed the amended disclosure statement on December 28, 1989, in which the Donaldsons undertook to guarantee the payments under the plan. The revelation in the amended disclosure statement that Marion would guarantee Insulfoams' payments is particularly significant because the bankruptcy court rejected the original disclosure statement as it

17

did not include any such guaranty. Accordingly, we find that the district court did not abuse its discretion in binding her to her undertakings in the amended disclosure statement and therefore she is judicially estopped from now asserting that she resigned before plan confirmation. See McNemar v. The Disney Store, Inc., 91 F.3d 610, 613 (3d Cir. 1996) ("This court reviews the district court's application of judicial estoppel for abuse of discretion.").

In any event, the bankruptcy court found not credible Marion's claim that she had resigned, and thus on this basis as well it treated her as an officer and fiduciary of Insulfoams at the times material to this proceeding. In reaching its conclusion, the bankruptcy court examined the totality of circumstances surrounding the bankruptcy case, the severe doubts as to the authenticity of her resignation letter, the failure to disclose the resignation prior to 1994, her participation in the preparation of the court documents after her alleged resignation, and the credibility of the various witnesses. We cannot conclude that the bankruptcy court's factual conclusions that she had not resigned were clearly erroneous. Insulfoams, 184 B.R. at 706-07. Accordingly, in fact, as well as by judicial estoppel, Marion had a fiduciary obligation to the creditors.

## F. Other Liability Issues

The Donaldsons do not challenge the bankruptcy court's holding that they owed a fiduciary duty to the creditors, except for their contention, which we have rejected, that Marion owed

18

them no duty because she severed her relationship with Insulfoams in 1990.  Thus, they have no basis to object to the award of compensatory damages which, in any event, was justified.[6]

The Donaldsons contend, however, that the judgment for punitive damages was inappropriate.  It is clear that under Pennsylvania law, which the bankruptcy court treated as applicable in a determination not challenged here, a decision on whether to award punitive damages and the scope of those damages is in the discretion of the finder of fact.  Delahanty v. First Pennsylvania Bank, 464 A.2d 1243, 1263 (Pa. Super. Ct. 1983). Punitive damages are appropriate when the act committed, in addition to causing actual damages, constitutes "outrageous conduct," either through reckless indifference or bad motive. McClellan v. Health Maintenance Org. of Pennsylvania, 604 A.2d 1053, 1061 (Pa. Super. Ct. 1992); see also Feld v. Merriam, 485 A.2d 742, 747–48 (Pa. 1984) (Restatement (2d) of Torts § 908(2) regarding imposition of punitive damages adopted in Pennsylvania).  Three factors can be considered when awarding punitive damages:  (1) the character of the act; (2) the nature and extent of the harm caused; and (3) the wealth of the

---

6.     While Dennis does not deny that as an officer of Insulfoams he owed a fiduciary duty to its creditors, he does deny that he understood the amended disclosure statement as including his guaranty of the payments to fund the plan.  In these circumstances we have no need to review the bankruptcy court's holding that the Donaldsons owed a fiduciary duty to Insulfoams' creditors under Pennsylvania law.  Of course, we reject Dennis's contention that he is not bound by the amended disclosure statement.  We also point out that the Donaldsons do not challenge the computation of the compensatory damages.

defendant. <u>Kirkbride v. Lisbon Contractors, Inc.</u>, 555 A.2d 800, 803 (Pa. 1989).

The bankruptcy court found that the Donaldsons' actions constituted outrageous conduct above and beyond the breach of fiduciary duty which justified the compensatory damages. <u>See</u> <u>Smith v. Renaut</u>, 564 A.2d 188, 193-94 (Pa. Super. Ct. 1989) (holding that conduct must be beyond the fraud which supported compensatory damages to award punitive damages). The court first found that the Donaldsons usurped Insulfoams' corporate opportunity for themselves. The court then found that they either knowingly, or with reckless disregard of the truth, misrepresented to the court and the creditors in the disclosure statement that they personally would guarantee payments under the plan. Both Donaldsons knew or should have known about the guaranty and what it meant. The court found that they acted with an evil motive: to obtain approval of the plan so that the tax payments to the IRS and the State of Pennsylvania, for which they were personally liable, could be made with estate funds, but that they had no intention of ever paying the unsecured creditors.[7] 184 B.R. at 709.

The court awarded $55,602.38 in punitive damages, which when combined with the compensatory damages exactly equals the amount owed to the unsecured creditors under the plan. So, the

___

7.   Although some of these events did take place prior to the plan's confirmation, the claims are not barred by <u>res</u> <u>judicata</u> because the breaches of fiduciary duty did not occur until well afterward. The pre-confirmation events are looked at only for background, pattern of activity, and for evidence of motive. <u>See</u> n.4, <u>supra</u>.

bankruptcy court in effect held the Donaldsons to their representations in order to deter and punish their misconduct. We find that the weight of evidence supports such a decision and accordingly we affirm the punitive damages award.[8]

The Donaldsons raise one last issue. They contend that their personal guaranty is invalid under the Pennsylvania Statute of Frauds, Pa. Stat. Ann. tit. 30, § 3 (1967), because they did not sign it. While it is unclear whether they raised this argument in the bankruptcy court, we will assume that they did, but will reject it nevertheless. The Pennsylvania Statute of Frauds provides that a guaranty must be in writing and "signed by the party to be charged therewith, or some other person by him authorized." Id. The amended disclosure statement was in writing and signed by Kenneth Steidl, the attorney for Insulfoams. See supp. app. at 104. As Insulfoams' only shareholders and officers, the Donaldsons were involved intimately in its reorganization. In the circumstances, there is sufficient evidence that Steidl was authorized to give the Donaldsons' guaranty.

## III. CONCLUSION

8.    We also find that the punitive damages were proportional to the compensatory damages, less than a 2 to 1 ratio, and that there is therefore no need to discuss a possible conflict between Pacific Mutual Life Ins. Co. v. Haslip, 111 S.Ct. 1032 (1991) (suggesting that punitive damages disproportionate to compensatory damages may violate due process), and Kirkbride, 555 A.2d at 803 (holding that punitive damages do not need to be proportional to compensatory damages). See Tunis Bros. Co. v. Ford Motor Co., 952 F.2d 715, 741 (3d Cir. 1991) (refusing to address same issue for different reason).

21

The order of the district court entered April 12, 1996, affirming the opinion of the bankruptcy court will be affirmed.