## In re ARROWMILL DEVELOPMENT CORP., Debtor.

### Bankruptcy No. 93–37013.

United States Bankruptcy Court,
D. New Jersey.

July 24, 1997.

---

Lindabury, Mccormick & Estabrook, Stephen A. Santola, Westfield, NJ, for Mary, Joan and Vincent Caglianone.

Benbrook & Benbrook, Kevin P. Benbrook, Clinton, NJ, for Creditor, Stefano Delliturri.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### *PROCEDURAL HISTORY*

This dispute, between two nondebtors, comes before the court as a motion by Stefano Delliturri ("Delliturri") to correct a clerical error pursuant to Fed.R.Civ.P. 60(b) and to interpret language contained in the debtor's third amended plan of reorganization as advised by the state court. Delliturri and John, Mary, Joan and Vincent Caglianone (the "Caglianones") were parties to a state court fraudulent conveyance action, *Stefano Delliturri v. John Caglianone, Mary Caglianone et al.*, Superior Court of the State of New Jersey, Chancery Division, Hunterdon County, HNT–C–14042–94. Delliturri asserted that John Caglianone fraudulently transferred real property to his wife Mary and their children. The state court, Hon. Wilfred Diana, found that the reorganization plan of debtor, Arrowmill Development Corp. ("debtor"), discharged John Caglianone from all debts against him, including the debt of Delliturri.

On December 12, 1996 the Appellate Division, A–3876–95TI, issued a decision reversing Judge Diana ("Dreier Opinion"). The Appellate Division raised several issues con-

cerning the propriety of discharging a non-debtor through a reorganization plan. The Dreier Opinion thus directed the state trial court to supervise the parties' submission of the present dispute to the bankruptcy court. Judge Diana communicated with this court concerning the matter and thereafter advised the parties that this court would undertake to resolve the issues raised by the Appellate Division.

This court heard the matter on April 14, 1997 and reserved. The parties thereafter submitted supplemental briefs. The bankruptcy court has jurisdiction to hear the matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a). The issue of jurisdiction will be specifically addressed below. *See infra* p. 501, n. 2.

### FACTS

Movant, Stefano Delliturri, leased space for his pizzeria and restaurant in debtor's shopping center. Delliturri sued debtor and John Caglianone in a separate state court action seeking damages for fraudulent inducement to enter into a commercial lease. John Caglianone is an equity holder of debtor, and negotiated the lease with Mr. Delliturri on debtor's behalf. The state court action was the object of a settlement in which Delliturri was to receive $102,000 from the defendants, jointly and severally. On April 7, 1994, after a default and in accordance with the terms of the settlement, a judgment in the same amount was entered in Delliturri's favor. The judgment was later amended on March 3, 1995 to adjust the amount to $77,555.

Delliturri filed a timely proof of claim in debtor's chapter 11 proceeding in March 1994. Various reorganization plans were filed. The main protagonists in the plan confirmation process were Shoprite of Clinton, the chief tenant of the shopping center and the major secured creditor, YBF Clinton, Inc. ("YBF"). YBF ultimately obtained ownership of the shopping center. Delliturri was served with copies of those plans as well as the final third amended plan submitted by

the debtor corporation. Delliturri took no position with regard to the plan and did not participate in negotiations. The third amended plan was eventually confirmed by this court.

The reorganization plan contained two paragraphs, ¶¶ 1.17 and 2.3, which are at the heart of this dispute. The paragraphs state: " '[D]ischarge' ... includes a release of all liability on each Allowed Claim of any Equity Interest Holder." ¶ 1.17 ... "Pursuant to § 1141 of the Code, confirmation of this Plan shall also discharge all claims *against* Debtor's equity Interest holders or Affiliates." ¶ 2.3 (emphasis added).

Delliturri thereafter sought to enforce his judgment against property of John Caglianone. As part of enforcement efforts Delliturri brought the subject action in state court to set aside conveyance of real estate described above. The Caglianones claimed that debtor's reorganization plan discharged John Caglianone from his individual debt to plaintiff, relying on paragraphs 1.17 and 2.3 above. Judge Diana agreed and dismissed the complaint.

The Appellate Division found that the language of the above stated paragraphs violated 11 U.S.C. § 1141(d)(1)(A) which states that the discharge is effective against the debtor only. Further, Judge Dreier, speaking for the court, found that the language in the plan closely paralleled the language of 1141(d)(1)(A) except that the statute provides for the opposite result, i.e. that confirmation terminates the claims *of* the equity interest holders (not claims *against* equity).

Judge Dreier posited that either the bankruptcy court deliberately modified the provisions of 1141(d)(1) [1], or that there was a mistake in the language which could be corrected under Fed.R.Civ.P. 60(a). The Dreier Opinion rejected the Caglianones' argument that Delliturri is bound by the terms of the plan since he was provided notice of the plan and failed to object. Judge Dreier found that even an experienced bankruptcy attorney quickly reading the plan might have

---

**1.** Judge Dreier relied upon *In re Elsinore Shore Assocs.*, 91 B.R. 238, 250 (Bankr.D.N.J.1988), for the proposition that a reorganization may discharge a nondebtor where the effected creditors consent to such discharge. *Id.*

assumed that paragraph 2.3 merely paralleled 11 U.S.C. § 1141(d)(1)(A). Judge Dreier further held that, the issue of equity discharge was never made clear by debtor or John Caglianone during the plan confirmation process, hearings or negotiations, and that it would have made no sense for Delliturri to agree to it. The Appellate Division also rejected the argument that the equity holders contributed capital to the corporation as a *quid pro quo* for the discharge, because that capital was only $50,000 which amount is less than Delliturri's claim. Movant asserted that, in fact, John Caglianone did not contribute *any* capital to the corporation. The Caglianones did not controvert that assertion.

The Dreier Opinion held that reorganization plans may contain a voluntary discharge of debts against stockholders if the intent is clear from the documents. *In re Elsinore Shore Assocs.*, 91 B.R. 238, 250 (Bankr. D.N.J.1988). However, the Appellate Division found such clarity lacking in this case and could not resolve the conflicting testimony about what occurred during plan confirmation.

Recognizing that the circuit courts are in disagreement and that the Third Circuit has yet to address the issue, this court questioned, at the hearing held after the matter was returned from the Appellate Division, whether it had jurisdiction to discharge a nondebtor through a chapter 11 reorganization plan in contravention of 11 U.S.C. § 524(e) which specifically limits discharge to the debtor alone. The parties submitted supplemental briefs, each urging the court to follow the particular circuit court opinion which supports its position. For the reasons stated below, the court finds that while it had subject matter jurisdiction to hear the matter, it did not have the statutory power or authority to discharge John Caglianone from the debt of creditor, Stefano Delliturri. The court also finds that a contractual release of liability was not formed between John Caglianone and Delliturri as there was no affirmative manifestation of assent by Delliturri to such release.

## DISCUSSION

### Jurisdiction

█ Whenever a bankruptcy court is asked to resolve a dispute or to enter relief pertaining to nondebtors, it must take a hard look at its jurisdictional basis to do so. As noted by the Third Circuit, "[b]ankruptcy jurisdiction, however, was not conferred for the convenience of those not in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d at 996 (3d Cir.1984). In this case, nondebtor Delliturri has asked the court to determine whether or not it should have granted nondebtor John Caglianone a discharge through the reorganization plan.[2] Thus the starting place for analysis of nondebtor discharge is jurisdiction under 28 U.S.C. § 1334(b).[3]

█ In the context of nondebtor releases, the Fifth Circuit explained that "the existence of power within the bankruptcy case does not imply an expansion of jurisdiction beyond it. To the contrary, it suggests that courts must be particularly careful in ascertaining the source of their power, lest bankruptcy courts displace state courts for large categories of disputes ..." *Matter of Zale Corp. (Feld v. Zale Corp.)*, 62 F.3d 746, 755 (5th Cir.1995). Accordingly, the bankruptcy

---

**2.** This court also has the jurisdiction to decide this motion pursuant to 28 U.S.C. § 1334(b), as it is being asked to interpret its own order confirming the reorganization plan as well as the plan itself. *See In re Lafayette Radio Elec. Corp. (Wards Co., Inc. v. Jonnet Dev. Corp.)*, 761 F.2d 84, 91 (2d Cir.1985). *See also Donaldson v. Bernstein*, 104 F.3d 547, 553 (3d Cir.1997) (bankruptcy court had jurisdiction under 28 U.S.C. § 1334(b) to hear chapter 7 trustee's action to enforce reorganization plan).

**3.** 28 U.S.C. § 1334(b) provides in pertinent part that: "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

*See also Matter of Zale Corp. (Feld v. Zale Corp.)*, 62 F.3d 746, 751 (5th Cir.1995)(first step in analyzing nondebtor releases is determining whether subject matter jurisdiction exists); *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994) (same); *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir.1995) (same); *In re Am. Hardwoods, Inc. (Am. Hardwoods, Inc. v. Deutsche Credit Corp.)*, 885 F.2d 621, 624 (9th Cir.1989) (same); *Matter of Munford, Inc. (Munford, et al. v. Munford, Inc.)*, 97 F.3d 449, 453 (11th Cir.1996) (same).

court may entertain a release of a nondebtor entity only once subject matter jurisdiction is established. *Id.*

■ Pursuant to 28 U.S.C. § 1334(b) bankruptcy courts have original jurisdiction over proceedings (1) arising under Title 11, (2) arising in a case under Title 11 and (3) proceedings related to a case under Title 11. *See Donaldson v. Bernstein,* 104 F.3d 547, 552 (3d Cir.1997). Cases involving relief between two nondebtors fall under the third category of "related to" jurisdiction. *Quattrone Accountants, Inc. v. IRS,* 895 F.2d 921, 926 (3d Cir.1990). *See also Donaldson v. Bernstein,* 104 F.3d at 552 ("since the third category is the broadest, 'a court need only determine "whether a matter is at best related to the bankruptcy." ' " *Id.*) (citing *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 264 (3d Cir.1991)).

■ The almost universally accepted test, developed by the Third Circuit in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), for determining whether a matter is "related to" the bankruptcy proceeding is "if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." 743 F.2d at 994. Although "related to" jurisdiction is extremely broad, the Third Circuit has warned that "courts must be confined within appropriate limits and [jurisdiction] does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case." *Donaldson v. Bernstein,* 104 F.3d at 553 (citing *Beard v. Braunstein,* 914 F.2d 434, 442–45 (3d Cir.1990)).

■ "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling or administration of the bankruptcy estate." *Pacor v. Higgins,* 743 F.2d at 994. However, "the mere fact that there may be common issues of fact between a civil proceeding and controversy involving the bankruptcy estate does not bring the matter within the scope of Section [1334]. Judicial economy itself does not justify general jurisdiction." *Id.* In addition, the mere fact that the debtor and another party are both liable for the same debt is not sufficiently "related to" the bankruptcy case where the liability of one entity does not effect the liability of the debtor. *Quattrone,* 895 F.2d at 926.

In determining whether a release of liability in favor of a nondebtor is "related to" the bankruptcy case courts have considered (i) whether or not there would be a financial effect on the estate, *Home Ins. Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746, 748–49 (7th Cir.1989); (ii) whether or not there would be an effect on the allocation of assets among creditors; *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 774 (8th Cir.1995); *Matter of Lemco Gypsum, Inc. (Miller v. Kemira, Inc.),* 910 F.2d 784, 789 (11th Cir. 1990); or (iii) whether or not there is an undeniable relationship between the administration of the bankruptcy estate and the outcome of the motion. *In re Am. Hardwoods, Inc. (Am. Hardwoods, Inc. v. Deutsche Credit Corp.),* 885 F.2d 621, 624 (9th Cir.1989).

■ In this case, the Caglianones contend that pursuant to the reorganization plan the debtor's principals, including John Caglianone, were to contribute $50,000 in new value to the estate. The Caglianones assert that the amount was negotiated upward to $300,-000, which John Caglianone was to raise through refinance of his residence. The Caglianone's argue that this amount was to be contributed by John Caglianone as a *quid pro quo* for his personal discharge of all debts against him. The Caglianone's also assert that the reason the funds have not yet been contributed to the estate is that Delliturri's *lis pendens* on the residence precludes a second mortgage.[4] As the reorganization

---

4. The Caglianones further argue that several creditors initially objected to the inclusion of the discharge of debtor's principals, but that those creditors withdrew their objections when the plan was amended to include a concession providing for auction of the shopping center if the plan was not funded by a date certain. The

Caglianones assert that this concession was a benefit to the estate provided by John Caglianone in exchange for his nondebtor discharge. This argument is misguided as the shopping center was owned by the debtor, not John Caglianone. Therefore, the decision to auction the property was made by the debtor after negotiations with

plan simply stated that debtor's shareholders would infuse "at least $50,000," with no designation of the source of those funds (*See* ¶ 1.29 of the Plan), the fact that Delliturri had a *lis pendens* on the residence is irrelevant.

The court finds that it had the subject matter jurisdiction at the time it entered the relief which purported to discharge John Caglianone from liability. Under the tests established by the Seventh, Eighth and Eleventh Circuits[5], there would have been a direct financial effect on the assets of the estate as well as an effect on the allocation of assets among the creditors. John Caglianone was required by the reorganization plan to contribute a sum certain to the estate and parties to the plan may have been able to sue for enforcement of that term prior to the sale of the property.[6] Thus the contribution of capital meets the more stringent tests set forth by other circuits concerning discharge of nondebtors specifically.

The facts also meet the broader test set forth by the Third Circuit concerning nondebtors generally. Under that test, the matter is "related to" the bankruptcy proceeding if it "could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d at 994. Delliturri urges that the court find that it was retroactively divested of its jurisdiction because the capital contribution was not paid by John Caglianone. However, the test in *Pacor* is whether the matter "*could conceivably* have any effect on the estate." *Id.* (emphasis added). At the time the court confirmed the plan, John Caglianone was required to pay at least $50,000 which *could conceivably* have augmented the assets of the estate. In *Pacor* the court considered

the nexus of a products liability action between a consumer (Higgins) and a distributor (Pacor) of the bankrupt's asbestos products. *Id.* The court held that if the outcome of the action *could conceivably* affect the estate there was jurisdiction. The court did not narrow the rule to encompass only those actions which actually did affect the estate after full litigation. To do so would create a morass by requiring a reevaluation of every act taken by a bankruptcy judge at the conclusion of the particular action or matter involved, to determine whether in fact, the estate was effected as anticipated.

Having found that the court did possess subject matter jurisdiction to entertain a release of nondebtor, John Caglianone, the court must now consider the issue of discharge.

### Discharge of Nondebtors

 A discharge in bankruptcy is an involuntary release by operation of law of creditor claims against an entity (both asserted and unasserted) which is enforced by the court. *See* Judith R. Starr, *Bankruptcy Court Jurisdiction to Release Insiders from Creditor Claims in Corporate Reorganizations,* 9 BANKR.DEV.J. 485, 487 (1993) (citing *In re Monroe Well Serv., Inc.,* 80 B.R. 324, 334 (Bankr.E.D.Pa.1987)). Since a discharge is an extreme remedy, stripping a creditor of its claims against its will, it is a privilege reserved for those entities which file a petition under the bankruptcy code and abide by its rules. Simply put, "the enjoyment of the benefits afforded by the code is contingent on the acceptance of its burdens." *Id.* at 498.

 A chapter 11 debtor receives a discharge upon confirmation of a plan, pursuant to 11 U.S.C. § 1141(d)(1).[7] That discharge is

---

the creditors. No further obligation is due to the creditor. Thus this court fails to see how that decision could be construed as a benefit to the estate bestowed by John Caglianone.

5. *Home Ins. Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746, 748–49 (7th Cir.1989); *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 774 (8th Cir.1995); *Matter of Lemco Gypsum, Inc. (Miller v. Kemira, Inc.),* 910 F.2d 784, 789 (11th Cir. 1990).

6. The extent and amount of Mr. Caglianone's liability under the reorganization plan is not be-

fore the court and the court makes no findings as to those issues. Rather, the discussion of contribution of capital is intended merely to illustrate the findings concerning subject matter jurisdiction.

7. 11 U.S.C. § 1141(d)(1) provides: "Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of the plan(A) discharges the debtor from any debt that arose before the date of such confirmation ..."

specifically limited, however, by 11 U.S.C. § 524(e). Section 524(e) provides that, "[e]xcept as provided in subsection (a)(3) of this section,[8] discharge of a debt of the debtor *does not affect the liability of any other entity on, or the property of any other entity for, such debt.*" 11 U.S.C. § 524(e) (emphasis added).

█ Many of the cases cited below distinguish between the bankruptcy court's subject matter jurisdiction to hear a matter, and its statutory authority or power to release or discharge a nondebtor. *See, e.g., In re Am. Hardwoods, Inc. (Am. Hardwoods, Inc. v. Deutsche Credit Corp.)*, 885 F.2d 621, 624 (9th Cir.1989) ("Subject matter jurisdiction and power are separate prerequisites to the court's capacity to act.... Power ... is the scope and forms of relief the court may order in an action in which it has jurisdiction." *Id.*). Consequently, while a bankruptcy court may have subject matter jurisdiction to hear a dispute between nondebtors, it may lack the statutory authority to enter a particular type of relief, such as nondebtor discharge. The bankruptcy code provides bankruptcy courts with the power or authority to confirm a reorganization plan only if that plan "complies with the applicable provisions of [title 11]." 11 U.S.C. § 1129(a)(1). Thus, if the plan does not comply with the code, the court may not confirm the plan. In the case of a nondebtor discharge, section 524(e) specifically prohibits the expansion of the discharge beyond the debtor itself.

The circuit courts are divided over the issue of nondebtor discharge. Emerging from such decisions are three lines of cases. The first line of cases holds that reorganization plans may discharge nondebtors even over the objection of creditors. *Monarch Life Ins. Co. v. Ropes & Gray (In re Monarch Capital Corp.)*, 173 B.R. 31 (D.Mass. 1994), *aff'd*, 65 F.3d 973, 980 (1st Cir.1995) (this case involved principles of collateral estoppel; the panel did not discuss 11 U.S.C. § 524(e); and the court stated it was not ruling on the issue of jurisdiction); *MacArthur Co. v. Johns–Manville Corp. (In re*

*Johns–Manville Corp.)*, 837 F.2d 89, 93 (2d Cir.1988), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988) (This case involved an asbestos class action. The court based its ruling upon the bankruptcy court's equitable power under 11 U.S.C. § 105(a). Asbestos cases are presently controlled by the Bankruptcy Reform Act of 1994 amendment, which specifically permits asbestos class action settlements. *See* 11 U.S.C. §§ 524(g) and (h)); *Matter of Munford, Inc. (Munford v. Munford, Inc.)*, 97 F.3d 449, 454 (11th Cir.1996) (court found that the bankruptcy court had jurisdiction under 28 U.S.C. § 1334(b) to settle litigation over objection of non-settling defendants; the court did not discuss section 524(e)); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir.1987) (court decided case based upon principles of res judicata and did not address 11 U.S.C. § 524(e) or jurisdiction, other than to state that the bankruptcy court must make a determination that it had jurisdiction to discharge nondebtors); *Menard–Sanford v. Mabey (In re A.H. Robins Co., Inc.)*, 880 F.2d 694 (4th Cir.1989), *cert. denied*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989) (followed *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987)).

The second line of cases holds that the bankruptcy court may never discharge or release a nondebtor. *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 756 (5th Cir.1995) (court found that there was no subject matter jurisdiction under 28 U.S.C. § 1334(b); court did not address 11 U.S.C. § 524(e), or the issue of consent); *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir.1994) (same); *In re Am. Hardwoods, Inc. (Am. Hardwoods, Inc. v. Deutsche Credit Corp.)*, 885 F.2d 621, 626 (9th Cir.1989) (bankruptcy court cannot approve plan under 11 U.S.C. § 1129(e) if the plan violates section 524(e); court did not discuss consent); *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1402 (9th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996) (same); *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 229 (5th Cir.1997)

---

**8.** Subsection (a)(3) relates to community property and is not relevant here. 11 U.S.C. § 524(a)(3).

(same); *In re Western Real Estate Fund, Inc. (Landsing Diversified Properties–II v. First Nat'l Bank and Trust Co. of Tulsa)*, 922 F.2d 592, 602 (10th Cir.1990), *modified sub nom., Abel v. West*, 932 F.2d 898 (10th Cir.1991) (same). As can be seen, even within the specific lines of cases, different rationales have developed. This court recognizes that the modern trend among the circuits is to find that the bankruptcy court may not discharge nondebtors. However, the court notes that the circuit decisions finding lack of jurisdiction, involved fact sensitive determinations which may not be apposite in every case. In addition, the other circuits (which relied upon section 524(e)) did not address the implications of consent by the creditors.

The third line and majority view is that bankruptcy courts may "discharge" or release nondebtors from their debts only if the effected creditors consent. *In re AOV Indus., Inc.*, 792 F.2d 1140, 1145–46 (D.C.Cir. 1986) (court did not address 11 U.S.C. § 524(e) because the issue was deemed moot); *Matter of Specialty Equip. Co., Inc.*, 3 F.3d 1043, 1047 (7th Cir.1993) (court may discharge nondebtor with consent, court found that section 524(e) "does not purport to limit or restrain the power of a bankruptcy court to otherwise grant a release of third parties." *Id.*) (the Seventh Circuit specifically disavowed its prior case, *Union Carbide Corp. v. Newboles*, 686 F.2d 593 (7th Cir. 1982), which categorically prohibited nondebtor releases. *Id.* at 1046.); *In re Elsinore Shore Assocs*, 91 B.R. 238, 250 (Bankr. D.N.J.1988) (same); *In re Resorts Int'l*, 145 B.R. 412, 468 (Bankr.D.N.J.1990) (same); *In re West Coast Video Enter., Inc.*, 174 B.R. 906, 911–12 (Bankr.E.D.Pa.1994) (same); *In re Monroe Well Serv.*, 80 B.R. 324, 334–35 (Bankr.E.D.Pa.1987) (same); *In re Boston Harbor Marina Co.*, 157 B.R. 726, 730 (Bankr.D.Mass.1993) (same); *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 937 (Bankr.W.D.Mo.1994) (court surveyed existing case law on nondebtor discharge and reasoned that 524(e) does not limit a bankruptcy court's power to issue an injunction under 11 U.S.C. § 105(a). Court also held that court could discharge nondebtor if "overwhelming majority" of creditors accepted plan. *Id.* at 934.).[9]

The Third Circuit has not ruled on the issue of discharge of nondebtors through a chapter 11 reorganization plan. However, it did address its view of nondebtor discharge in the context of a chapter 13 case. *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3d Cir.1993). In *McAteer*, the Third Circuit held that the confirmation of debtor's chapter 13 plan, and a creditor's receipt of payment under the plan, did not operate to erase or alter that creditor's right to collect from a third party, nondebtor insurance company. *Id.* at 118.

Unlike the cases dealing with nondebtor discharge, the reorganization plan in *McAteer* did not contain a provision releasing or discharging nondebtors. Rather the nondebtor insurance company argued that the confirmation of the plan, the discharge of the *debtor* and the creditor's acceptance of the plan and receipt of payment, all operated to discharge the insurance company as well. In rejecting that argument, the court expounded its view of 11 U.S.C. § 524(e). Although the court was not ruling on a nondebtor discharge provision contained in a plan, its analysis is instructive. The Third Circuit explained that, "[w]hile it is true that the bankruptcy court's confirmation of the plan binds the debtor and all creditors vis-a-vis the debtor, it does not follow that a discharge in bankruptcy alters the right of a creditor to collect from third parties. Section 524(e) specifically limits the effect of a discharge." *Id.* (citing *Union Carbide Corp. v. New-*

9. This court rejects the argument that 11 U.S.C. § 105(a) can form the basis of the court's authority to issue a nondebtor discharge as "section 105 does not authorize relief inconsistent with more specific law." *In re Am. Hardwoods, Inc.*, 885 F.2d at 625–26. *See also In re Western Real Estate Fund, Inc.*, 922 F.2d at 601 (citing *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir.1987), *cert. denied*, 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988); *In re Golden Plan of Cal., Inc.*, 829 F.2d 705 (9th Cir.1986); *Johnson v. First Nat'l Bank*, 719 F.2d 270, 273 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984)). This court agrees with the Ninth Circuit which held, "the specific provisions of section 524 displace the court's equitable powers under section 105 to order the permanent relief [against a nondebtor] sought by [the debtor]." *In re Lowenschuss*, 67 F.3d at 1402.

*boles* [10], 686 F.2d 593 (7th Cir.1982)). The court continued:

> [A] bankruptcy discharge arises by operation of federal bankruptcy law, not by contractual consent of the creditors and ... a creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings ... While the Bankruptcy Code expressly alters the contractual obligations of the bankrupt, it does not contemplate the same effect on the obligations and liabilities of third parties.

*Id.* (Citations omitted).

Keeping in mind the Third Circuit's analysis that section 524(e) specifically limits the scope of the discharge, and that the Bankruptcy Code does not contemplate a discharge of nondebtors, this court holds that plans of reorganization may not contain provisions which discharge nondebtors. While the court agrees that there may be very good policy reasons [11] for providing a discharge to a nondebtor, the court is constrained by the plain language of 11 U.S.C. § 524 and persuaded by the policy reasons against a blanket discharge of nondebtors.

As noted by one commentator:

> The Bankruptcy Code essentially provides for the forced compromise of creditors' claims against the debtor by limiting creditors to a pro rata distribution and prohibiting creditors, by the discharge provisions, from taking any further action on their claims. In return for this protection, the debtor must disclose all its assets and submit them to the control of the bankruptcy court. It is the acceptance of this burden by the debtor, together with the economic reality that a debtor in bankruptcy cannot pay all claims against it in full, which form the basis for the extraordinary power of the court to force a creditor to accept less than full value for its claim ... "[S]uch an extension of the [discharge] is necessarily

naked of the protections woven into [the Code]."

Judith R. Starr, *Bankruptcy Court Jurisdiction to Release Insiders from Creditor Claims in Corporate Reorganizations,* 9 BANKR.DEV.J. 485, 498 (1993).

The Tenth Circuit explained that "such a permanent injunction improperly insulate[s] nondebtors in violation of section 524(e) ... without any countervailing justification of debtor protection." *In re Western Real Estate,* 922 F.2d at 601–02. Furthermore, nondebtor releases harm third party creditors, and create a further incentive for principals to enter their corporate entities into bankruptcy "for reasons that have nothing to do with the purposes of the bankruptcy *law.*" *Zerand–Bernal,* 23 F.3d at 162. As cautioned by a commentator, nondebtor discharge has "potential for abuse, in which corporate bankruptcy becomes a form of insurance for insiders and thus creates a moral hazard ... because insiders may be tempted to engage in high risk behavior by the knowledge that they can protect themselves from its consequences by taking the corporation [and not themselves] into chapter 11." STARR, 9 Bankr.Dev. J. at 499.

### Consent to Release of Liability of Nondebtor by Effected Creditor

When a release of liability of a nondebtor is a consensual provision, however, agreed to by the effected creditor, it is no different from any other settlement or contract and does not implicate 11 U.S.C. § 524(e). A voluntary, consensual release is not a discharge in bankruptcy. As indicated above, a discharge is an involuntary release of a creditor's debt by operation of law. *See infra* p. 503. Where the creditor consents to the release, and presumably receives consideration in exchange for that agreement, it has not been forced by virtue of the discharge provisions of the code, to accept less than full value for its claim. As such, non-

---

**10.** As stated above, that case has been specifically overruled by the Seventh Circuit. *Matter of Specialty Equip.,* 3 F.3d at 1046.

**11.** There are situations where the debtor and the creditors might benefit from third party release, i.e., where there will be contribution of substan-

tial assets to the estate, absence of release or injunction would result in depletion of assets necessary for reorganization, reorganization would be impossible without release, and retention and attraction of key management. *See, e.g., In re Master Mortgage,* 168 B.R. at 934–35.

debtors do not reap the benefits of bankruptcy without accepting its burdens because they must offer sufficient inducement to achieve settlement. Furthermore, they "are not protected from the consequences of prepetition acts by the ability to use the Code to force a discounted settlement on unwilling creditors." *Id.* at 500. These settlements by their voluntary nature, serve the interests of all parties involved by promoting reorganization without unfairly burdening other creditors.

Furthermore, as the settlements arise by agreement of the parties and not by operation of law, they do not run afoul of section 524(e). As stated by the Third Circuit, "a bankruptcy discharge arises by operation of federal bankruptcy law, not by contractual consent of the creditors ... While the Bankruptcy Code expressly alters the contractual obligations of the bankrupt, it does not contemplate the same effect on the obligations and liabilities of third parties." *First Fidelity Bank v. McAteer*, 985 F.2d 114, 118 (3d Cir.1993). In the case of voluntary releases, the nondebtor is released from a debt, not by virtue of 11 U.S.C. § 1141(b), but because the *creditor agrees to do so.* Thus the Bankruptcy Code has not altered the contractual obligations of third parties, the parties themselves have so agreed.

▌ Accordingly, it is not enough for a creditor to abstain from voting for a plan, or even to simply vote "yes" as to a plan. (*See McAteer,* "a creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings." 985 F.2d at 118).[12] Rather the "validity of the release ... hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order." Peter E. Meltzer, *Getting out of Jail Free: Can the Bankruptcy Plan Process Be Used to Release Nondebtor Parties?,* 71 AM.BANKR.

L.J. 1, 40 (Winter 1997). Thus, the court must ascertain whether the creditor unambiguously manifested assent to the release of the nondebtor from liability on its debt.

In this case, creditor Delliturri did not vote for the plan and clearly did not manifest any assent to have his claim against John Caglianone released. Accordingly, paragraphs 1.17 and 2.3 of the reorganization plan do not release Mr. Caglianone from any liability he may have had to Mr. Delliturri.[13]

## CONCLUSION

For all of the above reasons, this court finds that the court had the subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) to enter relief between nondebtors Stefano Delliturri and John Caglianone. The court did not have the authority, however, to enter a discharge of John Caglianone of all debts against him, as that relief is prohibited by 11 U.S.C. § 524(e). The court further finds that Mr. Delliturri did not voluntarily assent to the release of his debt against John Caglianone. Therefore a contractual release was not achieved; and paragraphs 1.17 and 2.3 of the reorganization plan do not operate as a release of his debt. Mr. Delliturri's claim against John Caglianone was not affected by the bankruptcy proceedings. Counsel for Mr. Delliturri shall submit an order consistent within this opinion within ten days.

---

12. To that end, this court disagrees with those circuits which hold that confirmation of a reorganization plan may discharge a nondebtor under principles of *res judicata. See, e.g., Monarch Life Ins. Co. v. Ropes & Gray (In re Monarch Capital Corp.),* 173 B.R. 31 (D.Mass.1994), *aff'd,* 65 F.3d 973 (1st Cir.1995); *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987).

13. This court makes no finding as to the validity of paragraphs 1.17 and 2.3 *vis-a-vis* any other creditors. The facts and circumstances of those situations are not before the court.