### In re NINE NORTH CHURCH STREET, Inc.

### No. 257.

Circuit Court of Appeals, Second Circuit.

March 2, 1936.

Glass & Lynch, of New York City (Joseph Glass and Leslie Kirsch, both of New York City, of counsel), for appellants.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Tom Garrett and James A. Sweet, both of New York City, of counsel), for appellant Guaranty Trust Co. of New York as trustee.

Benjamin McClung and Charles B. Sullivan, both of Albany, N. Y. (Kenneth M. Spence and Henry G. Hotchkiss, both of New York City, of counsel), for debtor-respondent Nine North Church Street, Inc.

Greenbaum, Wolff & Ernst, of New York City (Edward S. Greenbaum and Benjamin Kaplan, both of New York City, of counsel), for respondent Maryland Casualty Co.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Nine North Church Street, Inc., the debtor herein, owns title to a parcel of real estate of that address in Schenectady, N. Y. On June 15, 1925, Colonial Apartment Corporation had executed and delivered to the Guaranty Trust Company, as trustee, a bond secured by a trust mortgage upon these premises and the trustee had issued $310,000 principal amount of participating certificates in this bond and mortgage. The trust mortgage provided that Colonial would pay interest on the bond at the rate of 6½ per cent. per annum and the certificates bore 6 per cent. yearly. The bond was to be paid in serial principal installments and the certificates had corresponding serial maturities. July 24, 1925, the Maryland Casualty Company as surety, and the Puritan Mortgage Company and Colonial as principals, had executed and delivered to the trustee a surety bond in which they jointly and severally bound themselves to pay the principal and interest of the bond and trust mortgage, the surety's obligation to be voided on payment by either principal of the amount secured by the mortgage and the interest thereon when and as due. It was provided that no action should accrue on the guaranty for the benefit of any one other than the trustee, the sole obligee named in the guaranty. The mortgage provided that upon receiving satisfactory indemnity from the holders of certificates in default, the trustee should enforce the guaranty and only holders of defaulted certificates had the right to cause the trustee to sue Maryland on the guaranty.

In January, 1933, Colonial having defaulted, Maryland had the legal title to the mortgaged premises transferred from Colonial to the Gedex Realty Corporation, a wholly owned subsidiary of Maryland. The transfer was subject to the trust mortgage, but the transferee did not assume any obligations on the certificate or the bond and trust mortgage representing Colonial's debt or Maryland's guaranty thereof. Neither Colonial, Puritan, Gedex, nor Maryland made the payment of principal and interest payable on the bond and of the trust mortgage and certificates, as required by their respective undertakings.

In August, 1933, Gedex circulated among the holders of the certificates a letter proposing that the serial maturities of the certificates be postponed for five years and that fixed interest be reduced from 6 per cent. to 2½ per cent. for three years and 3 per cent. thereafter. It was proposed that this be effectuated pursuant to uniform written assents to be signed by the holders of the certificates. A letter of transmittal provided that the

signer accepted the Gedex proposition, authorized the stamping of his certificates with a statement that the principal maturity of the certificates was postponed and the interest rate reduced accordingly. Eighty-five letters of transmittal representing $178,000 principal amount of certificates were signed and delivered. On February 15, 1935, the readjustments based on these Gedex assents were declared operative. But the appellants and other certificate holders refused to assent to the Gedex readjustment and their certificates remained unstamped and in default, and they proceeded to have the trustee sue Maryland in the state court. To forestall this, Maryland organized the Nine North Church Street Corporation, the debtor, and transferred the property to it, subject to the mortgage. One week later, this petition under Bankruptcy Act § 77B (11 U.S.C.A. § 207) was filed. After the new corporation was thus placed in section 77B proceedings, an injunction issued against the continuance of the suit against Maryland on its guaranty. The assents to the reduction procured by Gedex were used as consents to the plan of reorganization of the debtor and the plan has been confirmed. If this stands, it binds the nonassenters who are the appellants. The effect is to reduce Maryland's liability on the guaranty despite the fact that it has not secured the consent of all the guaranty creditors, nor has it come into reorganization so that the consent of two-thirds of its creditors would bind the nonassenters. This would be accomplished despite the fact that Maryland is a solvent corporation. Statements as to Maryland's difficulties on its various guaranties of other issues are unimportant, since Maryland is not a debtor in reorganization proceedings.

Section 77B is part of a general amendment to the Bankruptcy Act for the relief of debtors. Its provisions are conditioned upon a showing by the corporate debtor of facts evidencing need for relief and that the corporation is insolvent or is unable to meet its debts as they mature. By its guaranty, Maryland promised to meet certain obligations and these are not affected by reorganization of this debtor. Any modification of this contract can only be justified by the bankruptcy power which extends only to the relief of insolvent or hard pressed debtors. If Maryland is in that class, it must come into court and establish the fact. It cannot modify its obligations by the reorganization of other insolvents.

The debtor's argument that the certificate holders' rights against Maryland must be modified to allow a reorganization of this debtor is unconvincing. If the certificate holders collect on their guaranty, then Maryland will have a claim against the debtor. The reduction of this claim may be essential to a reorganization of the debtor. If it takes place, the debtor will be relieved by the reduction. Maryland will no doubt be dissatisfied since it must bear the burden of the reduction. But that is as it should be. Maryland assumed the guaranty and must now be held to it. To allow a guaranty to be modified every time the principal debtor found itself in financial difficulties would be to make a guarantor's obligation nominal only. The very purpose of, and only value in, a guaranty is as a protection against the principal's inability to pay. Without a reorganization of the guarantor and a showing that its financial conditions justify relief from its obligations, the contract between the obligees and the guarantor is inviolate.

The Bankruptcy Act points out the limitations on the court's power to enjoin. Suits against the debtor or to enforce any lien on his estate may be restrained. Section 77B (c) (10), 11 U.S.C.A. § 207 (c) (10). An indefinite power to enjoin in aid of the court's jurisdiction is granted by section 262 of the Judicial Code (28 U.S.C.A. § 377). Section 2 (15) of the Bankruptcy Act [11 U.S.C.A. § 11 (15)] gives bankruptcy courts power to make orders necessary for the enforcement of the provisions of the act. But that the writ of injunction can be exercised beyond the dictates of necessity is denied by section 265 of the Judicial Code (28 U.S.C.A. § 379). Section 16a of the Bankruptcy Act, 11 U.S.C.A. § 34, expressly reserving a creditor's rights against the guarantor of a discharged bankrupt's debt, shows that an alteration of the guarantor's liability is not conceived to be a necessity to a discharge of a bankrupt. Neither is relief of a guarantor essential to the debtor's reorganization. In the situation here, after Maryland pays the objecting certificate holders its claim to in-

demnity from the debtor would be subject to reduction. The suits against Maryland do not directly embarrass the debtor.

This case presents a question not presented in Re Prudence Bonds Corporation (President and Directors of Manhattan Co.), 79 F.(2d) 212 (C.C.A.2), since here the debtor owns the equity over the mortgage. But there is no obligation running from the debtor to the appellants and the appellants are not seeking to interfere with the debtor's property. They are enforcing a personal right against Maryland. The District Court here had no more jurisdiction to enjoin the state suit than it had to enjoin the foreclosure in the Prudence Case. The question would be different if the appellants held the debtors' bonds. But the appellants here are certificate holders, not creditors of this debtor. If they sought here to enforce their foreclosure rights over the debtor's property, they could, of course, be enjoined. Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island R. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; In re Prudence Bonds Corporation (Radin v. Chemical Bank & Trust Co.), 75 F.(2d) 262 (C.C.A.); In re Central Funding Corporation (C.C.A.) 75 F.(2d) 256; In re Mortgage Securities Corporation (C.C.A.) 75 F.(2d) 261. In Re 1775 Broadway Corporation (C.C.A.) 79 F.(2d) 108, holding that claims for mismanagement of the trust res could be impressed in a plan of reorganization, we proceeded on the ground that such claims affect the res and are within the court's power. Since these claims pertain to property to be turned over in the organization proceedings, they are within the court's jurisdiction. But there we said that as to tort claims against the seller of the bonds for misrepresentation, we would refuse to enjoin prosecution. They were not "claims against the debtor or its assets nor claims that must be settled in order to bring the property in the reorganization." As such the court had no jurisdiction over them. So here, the court below as to claims against Maryland was without jurisdiction, since the prosecution of such claims would not interfere with the debtor's property.

Nor can the decree approving the plan be sustained. Before the debtor came into existence, some of the certificate holders had consented to a reduction of their rights. The plan as proposed by the debtor did not further reduce these modified rights, while it did cut down the rights of those who had not co-operated in Gedex' proposition. Either there were two classes of creditors, with no consents from the second class (as required by § 77B (e) (1), 11 U.S.C.A. § 207 (e) (1), or there was a single class of creditors, with no reduction made in the rights of some of these, those certificate holders whose rights were already modified.

Decrees reversed.