J-A19019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CITIZENS BANK OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| FINE CAPITAL ASSOCIATES, L.P., AND FFC PARTNERSHIP, L.P., | |
| Appellees | No. 1367 WDA 2013 |

Appeal from the Order Entered August 5, 2013
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): GD-10-018621

BEFORE:  BENDER, P.J.E., OLSON and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 25, 2014**

Appellant, Citizens Bank of Pennsylvania, appeals from the order entered on August 5, 2013, which granted the motion for summary judgment filed on behalf of Appellees, Fine Capital Associates, L.P. and FFC Partnership, L.P. (hereinafter "the Guarantors"), implicitly denied Appellant's cross-motion for summary judgment, and dismissed Appellant's complaint against the Guarantors with prejudice.   After careful review, we are constrained to vacate the learned trial court's order in part and remand.

### Introduction

By way of overview, this case arose from a lending relationship between Appellant, the Guarantors, and the following entities:  BPP Illinois, LLC, BPP Iowa, LLC, BPP Michigan, LLC, BPP Minnesota, LLC, BPP Texas, LLC, and BPP Wisconsin, LLC (hereinafter "the Debtors").   Briefly stated,

_____

* Former Justice specially assigned to the Superior Court.

Appellant loaned the Debtors a substantial sum of money, so that the Debtors could develop certain hotel properties, and the Guarantors promised to be the Debtors' surety on the loan obligations. The promises and obligations of the parties were memorialized in a credit facility (between Appellant and the Debtors) and in a Guaranty and Suretyship Agreement (between Appellant and the Guarantors).

Appellant claimed that the Debtors and the Guarantors defaulted under the respective agreements; and, as a result of the default, Appellant accelerated the loan. When neither the Debtors nor the Guarantors paid Appellant's demand, Appellant filed suit against the Debtors and Guarantors in the Court of Common Pleas of Allegheny County, claiming breach of contract.

While the lawsuit was pending in the trial court, the Debtors filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. The trial court then stayed the entire underlying lawsuit pending the bankruptcy proceedings.

In the Bankruptcy Court, the Debtors' Confirmed Plan declared that, "in full and final satisfaction" of Appellant's claim, the Debtors were required to sell all of their hotel properties and provide Appellant with the proceeds from the sales. The Confirmed Plan also required that the Debtors execute and provide Appellant with amended loan documents, which restructured the loan. The Confirmed Plan then incorporated, into the Plan, the obligations contained in the restructured loan documents.

Following the discharge of the Debtors, Appellant's litigation against the Guarantors continued in the trial court. There, the Guarantors promptly filed a motion for summary judgment, claiming that the restructured loan documents – that Appellant and the Debtors had executed in the Bankruptcy Court and in accordance with the Confirmed Plan – had "cured" the Guarantors' earlier default under the Guaranty and Suretyship Agreement. The Guarantors also claimed that the restructured loan documents had materially modified their obligations as a surety, and that the Guarantors were thus relieved of any liability under the Guaranty and Suretyship Agreement.

The trial court granted the Guarantors' summary judgment motion and dismissed Appellant's complaint against the Guarantors. Appellant filed a notice of appeal.

## Facts

On October 4, 2010, Appellant commenced the instant suit by filing a complaint against the Guarantors and the Debtors.[1, 2] As Appellant averred, on February 8, 2008, Appellant agreed to loan the Debtors $66,000,000.00

---

[1] The complaint declared that each of the Debtors is a single-purpose, limited liability company, whose sole material asset is the ownership of one or more hotel. Appellant's Complaint, 10/4/10, at ¶¶ 2-7.

[2] Appellant claimed that the Guarantors and the Debtors "are all owned and controlled, through a number of corporate intermediaries, [by an individual named] Milton Fine." Appellant's Complaint, 10/4/10, at 3-4.

(hereinafter "the Loan"), so that the Debtors could renovate, reflag, purchase real property for, and operate the 22 hotels that the Debtors owned.[3]  Appellant's Complaint, 10/4/10, at ¶ 13.  The Loan was secured by mortgages on the 22 hotels and by a February 8, 2008 Security Agreement between Appellant and the Debtors.  *Id.* at ¶ 19.

The terms of the Loan were governed by a Credit Agreement, which Appellant and the Debtors executed on February 8, 2008.  The Credit Agreement defined an "Event of Default" as including the failure of the Debtors to pay the principal or interest on the Loan within 15 days of the amounts becoming due.  Credit Agreement, 2/8/08, at ¶ 8.1.1.  Under the Credit Agreement, if such an Event of Default occurred:

> [Appellant] shall be under no further obligation to make Loans and [Appellant] may by written notice to [the Debtors], declare the unpaid principal amount of the Notes then outstanding and all interest accrued thereon, any fees and all other Indebtedness of [the Debtors] to [Appellant] hereunder and thereunder to be forthwith due and payable, and the same thereon become and be immediately due and payable to [Appellant] without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived.

*Id.* at ¶ 8.2.1.

_____

[3] Appellant averred that "[a]ll of the [hotels] are owned by a [Debtor] in fee simple, with the exception of the Super 8 [Hotel] located in Wauwatosa, Wisconsin, which BPP Wisconsin holds as a leasehold."  Appellant's Complaint, 10/4/10, at ¶ 14.  Yet, for ease and clarity of explanation, we will simply refer to the Debtors as the "owners" of the hotels.

Moreover, pursuant to the terms of the Credit Agreement and in consideration of the credit that was to be granted the Debtors, Appellant and the Guarantors entered into a separate Guaranty and Suretyship Agreement. **See** Credit Agreement, 2/8/08, at ¶ 6.1.3 ("conditions of lending"); Guaranty and Suretyship Agreement, 2/8/08, at 1. Under the Guaranty and Suretyship Agreement, the Guarantors agreed to become the "absolute and unconditional guarantors and sureties as though they were primary obligors to [Appellant]" of, among other things: 1) "the prompt payment and performance when due" of a stated portion of the Debtors' principal payment obligations; and 2) the payment of all interest under the Loan and the payment of all expenses Appellant might incur in enforcing its rights or collecting under either the Guaranty and Suretyship Agreement or the Loan Documents.[4] Guaranty and Suretyship Agreement, 2/8/08, at ¶ 1.

_____

[4] The Credit Agreement defined the term "Loan Documents" in the following manner:

> Loan Documents shall mean [the Credit Agreement], the Guaranty Agreement, the Environmental Indemnity, the Lease Assignments, the Mortgages, the Notes, the Security Agreement, the Collateral Assignments, agreements related to Bank-Provided Hedges and any other instruments, certificates or documents delivered or contemplated to be delivered hereunder or thereunder or in connection herewith or therewith, as the same may be supplemented or amended from time to time in accordance herewith or therewith, and Loan Document shall mean any of the Loan Documents.

Credit Agreement, 2/8/08, at ¶ 1.1.

The Guaranty and Suretyship Agreement between Appellant and the Guarantors further provided: that Appellant may, at its sole option, exchange or release any collateral security held by Appellant for any of the "Debtor Liabilities;"[5] that Appellant may, at its sole option, "renew, extend, modify, supplement, amend, release, alter or compromise the terms of any or all of the Debtor Liabilities;" that the Guaranty and Suretyship Agreement was a continuing agreement and remained in force until "all Debtor Liabilities and all other amounts payable under the Loan Documents have been paid and performed in full;" that the Guarantors' liability under the Guaranty and Suretyship Agreement "is absolute and unconditional for the aggregate of the Debtor Liabilities;" that the Guarantors waived all notice with respect to the present existence or future incurrence of any Debtor Liabilities, including "the amount, terms[,] and conditions thereof;" and, that the Guarantors waived "any defense arising by reason of any disability or other defense whatsoever to the liability of any Debtor." **See id.** at ¶¶ 2, 4, 11, 12, 13,

_____

[5] Under the Guaranty and Suretyship Agreement, the term "Debtor Liabilities" included the "Principal Payment Liabilities" and the "Cost Payment Liabilities." In short, the "Principal Payment Liabilities" are the Debtors' existing and future liabilities and obligations with respect to the payment of the Loan principal (including "any extensions, modifications, . . . and substitutions therefor . . . of any nature whatsoever"); the "Cost Payment Liabilities" are the Debtors' existing and future liabilities and obligations with respect to the payment of the Loan interest and the cost of enforcing the agreements or collecting on the obligations (including "any extensions, modifications, . . . and substitutions therefor . . . of any nature whatsoever"). Guaranty and Suretyship Agreement, 2/8/08, at ¶ 1.

15, and 18. With respect to the Debtors' possible bankruptcy, the Guaranty

and Suretyship Agreement specifically declared:

> 16. BANKRUPTCY OF THE DEBTOR. Neither the Guarantors' obligations to make payment in accordance with the terms of [the Guaranty and Suretyship] Agreement nor any remedy for the enforcement hereof shall be impaired, modified, changed, released or limited in any manner whatsoever by any Debtor's bankruptcy or by any impairment, modification, change, release or limitation of (i) the liability of any Debtor, any Person assuming the obligations of any Debtor under any of the Loan Documents or such Debtor's estate in bankruptcy. . . .

*Id.* at ¶ 16.

Further, the Guaranty and Suretyship Agreement declared:

> 20. ACCELERATION OF THE GUARANTORS' LIABILITIES. Upon the occurrence of an Event of Default,[6] all of the Debtor Liabilities shall, at [Appellant's] sole option, be deemed to be forthwith due and payable for the purposes of this Agreement and for determining the liability of the Guarantors hereunder, whether or not [Appellant] has any such rights against any other Obligor, and whether or not [Appellant] elects to exercise any rights or remedies against any other Person or property including, without limitation, any other Obligor.

_____

[6] The Guaranty and Suretyship Agreement defined an "Event of Default" as including the following occurrences: 1) "[t]he Guarantors shall fail to pay any principal of any Loan (including scheduled installments, mandatory prepayments or the payment due at maturity) or shall fail to pay any interest on any Loan or any other amount owing hereunder or under the other Loan Documents within ten (10) days after such principal, interest or other amount becomes due in accordance with the terms hereof or thereof (whether at stated maturity, by acceleration or otherwise)" and 2) "[a]n 'Event of Default' shall occur under any other Loan Document." Guaranty and Suretyship Agreement, 2/8/08, at ¶¶ 19.1 and 19.4.

*Id.* at ¶ 20.

As Appellant averred, the Debtors borrowed a total principal amount of $65,815,728.44 from Appellant, in accordance with the above agreements. Appellant's Complaint, 10/4/10, at ¶ 42.

Appellant further averred that, on March 22, 2010, it provided the Debtors and the Guarantors with written notice that Events of Default under the Credit Agreement had occurred. These Events of Default included the failure of the Debtors and the Guarantors to make scheduled interest payments on the Loan. *Id.* at ¶ 26; Letter, 3/22/10, at 1-3. As a result of the default, Appellant informed the Debtors and the Guarantors that it was declaring the entire principal amount of the Loan and all interest, unpaid fees, and indebtedness to be "forthwith due and payable." Letter, 3/22/10, at 2; Appellant's Complaint, 10/4/10, at ¶ 26.

When neither the Debtors nor the Guarantors paid what was demanded, Appellant filed its two-count complaint, wherein Appellant claimed breach of contract against the Debtors and breach of guaranty against the Guarantors. Appellant's Complaint, 10/4/10, at ¶¶ 41-48.

The Debtors and the Guarantors filed responsive pleadings to Appellant's complaint and both sets of defendants denied liability. Within the Guarantors' answer and new matter, the Guarantors essentially claimed that they were not liable under the Guaranty and Suretyship Agreement because Appellant "orally modified the obligation underlying the Guaranty by consenting to the non-payment of interest" and, in the alternative, that their

obligations under the guaranty were discharged because Appellant impaired the value of the collateral. **See**, **e.g.**, The Guarantors' Answer and New Matter, 11/1/10, at ¶ 20.

On December 21, 2010, the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The trial court thus stayed Appellant's action against the Debtors, in accordance with Section 362(a) of the Bankruptcy Code. **See** 11 U.S.C. § 362 ("Automatic stay"). However, given that "it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not [normally] be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the debtor," Appellant filed a motion in the trial court, requesting that the trial court sever its claims against the non-debtor Guarantors and allow the litigation on those claims to proceed. **McCartney v. Integra Nat'l Bank N.**, 106 F.3d 506, 509-510 (3rd Cir. 1997) (internal quotations, citations, and corrections omitted); Appellant's Motion to Sever, 1/24/11, at 1-8 (declaring that, although it might be legally unnecessary, "it has become conventional practice in many jurisdictions, including Pennsylvania, to sever claims against non-debtor defendants to promote efficiency and procedural clarity going forward").

The Guarantors filed a response to Appellant's motion and argued that the trial court must deny the severance request because the Debtors "are []

indispensable parties to the instant litigation" and because Appellant's contract action could not proceed without the Debtors' participation.[7] The Guarantors' Response, 2/14/11, at 3. Further, the Guarantors filed a motion to stay the state court proceedings, again arguing that the Debtors were indispensable parties to the litigation.[8] The Guarantors' Motion to Stay, 2/14/11, at 5.

On July 13, 2011, over Appellant's objection, the trial court entered an order granting the Guarantors' motion to stay; the trial court ordered that the action was stayed in its entirety, pending a final resolution of the bankruptcy proceeding. Trial Court Order, 7/13/11, at 1.

_____

[7] *But see Read v. Pa. Co. for Ins. on Lives and Granting Annuities*, 12 A.2d 925, 927 (Pa. 1940) ("it is the law that a creditor may enforce his claim against the surety without first having proceeded against the principal").

[8] *But see McCartney*, 106 F.3d at 509-511 (courts may extend an automatic stay to non-debtor third parties only in "unusual circumstances," such as where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor" and where the stay protection "is essential to the debtor['s] efforts [at] reorganization"); *see also Credit Alliance Corp. v. Williams*, 851 F.2d 119, 122 (4th Cir. 1988) ("[t]he very purpose of a guaranty is to assure the creditor that in the event the debtor defaults, the creditor will have someone to look to for reimbursement. The purpose of the guaranty would be frustrated by interpreting [11 U.S.C. § 362] so as to stay [the creditor's] action against the non-bankrupt guarantor when the defaulting debtor petitioned for bankruptcy") (internal quotations, citations, and corrections omitted).

On September 27, 2011, the Debtors executed their Second Amended Modified Joint Consolidated Plan of Reorganization (hereinafter "the Plan") in the United States Bankruptcy Court for the Eastern District of Texas. The Plan declared that Appellant was allowed a secured claim in the amount of $67,400,835.06.[9] The Plan, 9/27/11, at ¶ 4.3.1. According to the Plan, "[i]n full and final satisfaction, discharge, and release" of Appellant's $67,400,835.06 secured claim, the Debtors would sell all of their hotels and then pay Appellant the proceeds from the sales. *Id.* at ¶ 4.3.3(i). Further, and as a condition of the discharge, the Plan required that the Debtors execute and then deliver to Appellant a number of documents, including: an amended and restated credit agreement (hereinafter "Amended Credit Agreement"), an amended and restated non-revolving credit note (hereinafter "Amended Note"), and an omnibus amendment and ratification agreement. *Id.* at ¶ 4.3.3(vii) and "Schedule A." As the Plan declared, the execution and delivery of the above documents was "a condition precedent to the occurrence of the Effective Date" and the Plan incorporated the obligations that were stated in the documents. *Id.* at ¶ 4.3.3(vii) and "Schedule A." Specifically, the Plan declared:

> The Reorganized Debtors shall execute, and shall deliver to [Appellant] no later than five [] Business Days following the

_____

[9] The Plan refers to Appellant's $67,400,835.06 secured claim as the "Lender Secured Claim." The Plan, 9/27/11, at 14.

- 11 -

entry of the Confirmation Order, the documents listed at Schedule A[10] attached hereto duly executed as appropriate. The execution and delivery of the same is a condition precedent to the occurrence of the Effective Date. Upon such delivery, the Reorganized Debtors shall comply with all obligations stated therein, including any reporting requirements, even if any such obligation is not specifically referenced in this Plan, in which case such obligation shall be deemed to be an obligation under this Plan. . . .

*Id.* at ¶ 4.3.3(vii) and "Schedule A."

The Amended Credit Agreement, Amended Note, and omnibus amendment and ratification agreement were amended loan documents concerning Appellant's Loan to the Debtors; the documents, in essence, restructured the Loan in order to effectuate the terms of the Plan. As the trial court succinctly explained, the documents provided for an amended "note in an amount greater than the amount of the original note, . . . included numerous material modifications to the financial terms and [covenants] governing the creditor-debtor relationship[,] . . . forced [the Debtors] to liquidate their assets in a relatively short time frame, and [declared that] the Debtors agreed to waive all defenses such as the right to seek bankruptcy relief." Trial Court Opinion, 11/15/13, at 6.

With respect to Appellant's claims against the Guarantors, the Plan explicitly declared:

_____

[10] "Schedule A" is attached to the Plan and lists the Amended Credit Agreement, the Amended Note, and the omnibus amendment and ratification agreement. The Plan, 9/27/11, at "Schedule A."

9.8 <u>No Discharge of Guarantors</u>. For the avoidance of doubt, nothing in this Plan and nothing in the Confirmation Order serves or will serve to discharge any claim, cause of action, or right that any creditor or person has against any third person or guarantor for or on account of a claim against one or more of the Debtors, including, without limitation, any claim that [Appellant] may have against the Guarantors. . . .

The Plan, 9/27/11, at ¶ 9.8.

On October 4, 2011, the Bankruptcy Court entered an order of confirmation (hereinafter "Confirmation Order"), which confirmed the Plan and declared that, except as otherwise provided in the Plan, the Debtors were discharged pursuant to section 1141(d)(1)(A) of the Bankruptcy Code. Confirmation Order, 10/4/11, at 6-7. The Confirmation Order declared that, henceforth, "all [p]roperty of the Debtors and their Estates vest[s] in the Reorganized Debtors." *Id.* at 7. Moreover, the Confirmation Order declared that the Debtors' discharge did not affect the liability of the Guarantors. The order declared:

the Plan and [the Confirmation] Order are wholly without prejudice to all claims, causes of action, defenses, and rights of [Appellant] as against the Guarantors . . . including, without limitation . . . all matters asserted or assertable in Case Number GD 10-18621 pending in the Civil Division, Court of Common Pleas of Allegheny County, Pennsylvania.

*Id.* at 9.

Finally, the Confirmation Order declared that the restructuring of the Loan was simply a "modification and amendment" of the Lender Secured

Claim and was not a "new extension of credit." With respect to this issue, the Confirmation Order declared:

> that the credit facility described in the Credit Agreement is a modification and amendment of the Lender Secured Claim pursuant to and as defined in the Plan and is not in any way a new extension of credit, an accord and satisfaction, or other arrangement that would impair in any way [Appellant's] right to assert claims against any non-Debtor party as to the Lender Secured Claim, nor would it or this Order impair in any way any non-Debtor's right to assert any defense thereto, including, without limitation, any defense relating to or arising from the modification and amendment of the Lender Secured Claim[.]

*Id.* at 8.

On February 13, 2012, the trial court issued an order dissolving the stay with respect to Appellant's case against the Guarantors; the trial court order also declared that the parties were permitted to file dispositive motions on the issue of the Guarantors' liability.[11] Trial Court Order, 2/10/12, at 1.

In response to the trial court's order, Appellant and the Guarantors filed cross-motions for summary judgment. Within Appellant's summary judgment motion, Appellant claimed that it was entitled to summary judgment, in its favor, with respect to the Guarantors' liability. According to Appellant, the principals of the Guarantors had admitted that, as of March

_____

[11] On October 20, 2011, Appellant filed a *praecipe* with the Allegheny County Department of Court Records (hereinafter "ACDCR"), requesting that the ACDCR discontinue the action against the Debtors with prejudice. Appellant's *Praecipe* to Discontinue, 10/20/11, at 1.

23, 2010, the Guarantors "had not made their most recently required interest payments and swap payments." Appellant's Brief in Support, 3/30/12, at 11. Since this constituted a default under the Guaranty and Suretyship Agreement and since this default caused Appellant to accelerate the Loan and demand that the Guarantors pay their obligation in full, Appellant claimed that it was entitled to a judgment as a matter of law with respect to the Guarantors' liability. ***Id.***

Further, Appellant claimed that the Guarantors had no defense to the breach of guaranty claim. Appellant noted that, within the Guarantors' answer and new matter, the Guarantors had claimed that Appellant "orally modified the obligation underlying the Guaranty by consenting to the non-payment of interest" and that Appellant impaired the value of the collateral. ***See***, ***e.g.***, The Guarantors' Answer and New Matter, 11/1/10, at ¶ 20. Appellant, however, claimed that these two defenses failed as a matter of law. With respect to the alleged forbearance agreement, Appellant claimed that this defense failed because the alleged oral forbearance: is barred by the statute of frauds; is unenforceable because it was not supported by any consideration; is unenforceable because the Credit Agreement contains a "no oral modification" clause; is not a valid agreement; does not discharge the Guarantors because the alleged oral forbearance occurred after the Guarantors' default; does not discharge the Guarantors because the alleged modification was not a material change that substantially increased the Guarantors' risk; and, was consented to by the Guarantors. Appellant's Brief

- 15 -

in Support of Motion for Summary Judgment, 3/30/12, at 12-23. Further, with respect to the "impairment of collateral" defense, Appellant claimed that this defense failed because the Guarantors signed an unconditional guaranty and thus "waived the right to participate in [Appellant's] collateral." *Id.* at 23-25.

Therefore, Appellant claimed that since the Guarantors admitted to being in default and since the Guarantors' defenses failed as a matter of law, Appellant was entitled to summary judgment in its favor. *Id.*

The Guarantors responded to Appellant's motion for summary judgment and primarily argued that the Debtors' bankruptcy – and the resulting Plan, amended loan agreements, and Confirmation Order – had "cured" the Guarantors' original default. The Guarantors argued:

> the Debtors filed bankruptcy petitions[,] a Confirmation Order confirming a "consensual" Plan was entered[,] and the Debtors and [Appellant] entered into [an Amended Credit] Agreement and executed the New Loan Documents to memorialize their agreement. As a matter of law, the Original Loan has been replaced and no longer exists. The Guaranty provides that the [Guarantors] originally were liable "as though they were primary obligors to [Appellant]." Since [the Guarantors] . . . stand in the shoes of the Debtors, when the Debtors' primary liability went away, so did the alleged liability of the [Guarantors].

The Guarantors' Response, 5/7/12, at 7.

Moreover, the Guarantors argued that: they never admitted that they were in default of the Guaranty and Suretyship Agreement; the Bankruptcy Court already determined that there was a valid forbearance agreement and

Appellant is collaterally estopped from claiming otherwise; the forbearance agreement is otherwise enforceable; and, the Guaranty and Suretyship Agreement does not permit the impairment of collateral. *Id.* at 8-11 and 18-23.

The Guarantors also filed a cross-motion for summary judgment and claimed that they were entitled to a judgment as a matter of law because "the Plan, the [Amended] Credit Agreement[,] and the New Note modify and restate the Original Credit Agreement and Original Note in their entirety, such that nothing of the Original Loan Documents remain[]." The Guarantors' Motion for Summary Judgment, 3/30/12, at 7. According to the Guarantors, since the Debtors were no longer liable under the Original Loan Documents, the Guarantors also could not be liable. *Id.* Further, the Guarantors claimed that they could not be liable under the Amended Credit Agreement, as the new contractual terms "materially increased [the Guarantors'] risk" – thus discharging their obligations as surety. *Id.* at 8; *see McIntyre Square Assoc.'s v. Evans*, 827 A.2d 446, 452 (Pa. Super. 2003) ("Where, without the surety's consent, there has been a material modification in the creditor-debtor relationship, a . . . compensated surety is discharged [] if, without the surety's consent, there has been a material modification in the creditor-debtor relationship and said modification has substantially increased the surety's risk").

On August 5, 2013, following extensive briefing and oral argument, the esteemed trial court judge entered an order that granted the Guarantors'

motion for summary judgment, implicitly denied Appellant's cross-motion for summary judgment, and dismissed Appellant's complaint against the Guarantors with prejudice. The trial court reasoned:

> The Bankruptcy agreement essentially restructured and reorganized the creditor-debtor relationship, and effectively discharged the Debtors as they stood under the Original Credit Agreement[. T]he consent agreement in the bankruptcy action [thus] renders the Original Credit Agreement null and void. As [the Guarantors' were] not [] part[ies] to the [Amended] Credit Agreement, and since the Original Credit Agreement no longer exists, any liability to the [G]uarantors for default events under the Original Credit Agreement [is] extinguished.

Trial Court Opinion, 11/15/13, at 9.

Appellant filed a timely notice of appeal and now raises the following claims to this Court:

> 1. Whether modifications to the loan entered into under a confirmed plan of reorganization in federal bankruptcy proceeding discharged the [Guarantors'] obligations under the guaranty?
>
> 2. Whether the [Guarantors] consented to modifications to the loan relationship contained in the plan and amended and restated credit agreement pursuant to the clear and unambiguous advance consents and waivers of suretyship defenses in the guaranty?
>
> 3. Whether the bankruptcy plan and amended and restated credit agreement constituted (1) material modifications to the debtor-creditor relationship, (2) which substantially increased the risk to the [Guarantors], and (3) to which the [Guarantors] did not consent (or were not deemed to have consented) such that the [Guarantors'] guaranty was discharged?

4. Whether the amended and restated credit agreement is a single integrated document that precludes enforcement of the [Guarantors'] guaranty?

5. Whether the [Guarantors'] guaranty was discharged as to the existing obligations of the [Debtors] under the plan and amended and restated credit agreement where the guaranty expressly guarantees all present and future liabilities of [the Debtors] to Appellant?

Appellant's Brief at 4-5.

**Analysis**

Initially, we conclude that Appellant waived any potential claim that the trial court erred when it implicitly denied Appellant's cross-motion for summary judgment. Within Appellant's brief to this Court, Appellant has focused its attention on the specific portion of the trial court's order that granted the Guarantors' summary judgment motion. Moreover, even though Appellant declares that we should direct that summary judgment be entered in its favor, Appellant has done so in conclusory fashion and has failed to establish that there are no genuine issues of material fact with respect to the claims raised in its own summary judgment motion. In particular, Appellant has not made any argument that the Guarantors' actual default has been established as a matter of law or that the Guarantors' stated defenses to the alleged default fail as a matter of law. *See*, *e.g.*, Appellant's Brief in Support of Motion for Summary Judgment, 3/30/12, at 11-25. Therefore, Appellant has waived any such claim on appeal. *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014) ("[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the

issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments") (internal quotations, citations, and corrections omitted).

Nevertheless, we conclude that Appellant's first claim on appeal entitles Appellant to relief. Specifically, we hold that the loan modifications entered into by the Debtors pursuant to the confirmed reorganization plan in the federal bankruptcy proceedings (and Appellant's consent thereto) do not relieve the Guarantors of their obligations under the Guaranty and Suretyship Agreement. We thus vacate the trial court's order in part and remand.[12]

In the case at bar, the trial court granted the Guarantors' motion for summary judgment and dismissed Appellant's complaint. We note:

> Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.
>
> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

_____

[12] Given our disposition, we need not address Appellant's remaining issues.

***Englert v. Fazio Mech. Serv.'s, Inc.***, 932 A.2d 122, 124 (Pa. Super. 2007) (internal citations omitted).

In granting the Guarantors' summary judgment motion, the trial court essentially ruled that the Debtors' bankruptcy – and the resulting Plan, amended loan agreements, and Confirmation Order – cured the Guarantors' original, alleged default under the Guaranty and Suretyship Agreement. According to the trial court, since Appellant and the Debtors executed amended loan documents during the bankruptcy proceeding, the "Original Credit Agreement no longer exists [and] any liability to the [G]uarantors for default events under the Original Credit Agreement are extinguished." Trial Court Opinion, 11/15/13, at 9.

We respectfully disagree with the trial court's conclusion. While we acknowledge the hard work and thoughtful consideration invested by the trial court in this case, our own review of the issues raised on appeal begins with, and focuses upon, the independent obligations of the Guarantors under their agreement with Appellant. As we develop in greater detail below, although Pennsylvania law is silent on the issue, we conclude that the restructuring of the Debtors' loan in bankruptcy – and the Debtors' resulting discharge – neither cured the Guarantors' earlier default nor defeated the Guarantors' promises on their own underlying obligations.

Section 524(e) of the Bankruptcy Code generally provides that the "discharge of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

Hence, ordinarily, the "discharge of the principal debtor in bankruptcy will not discharge the liabilities of co-debtors[, sureties,] or guarantors."[13] *In re American Hardwoods, Inc.*, 885 F.2d 621, 625 (9th Cir. 1989) (internal

---

[13] We note that the Restatement (Third) of Suretyship and Guaranty defines a "guarantor" and a "surety" in the following manner:

> if the parties to a contract identify one party as a "guarantor" or the contract as a "guaranty," the party so identified is a secondary obligor and the secondary obligation is, upon default of the principal obligor on the underlying obligation, to satisfy the obligee's claim with respect to the underlying obligation
>
> . . .
>
> if the parties to a contract to which the principal obligor and secondary obligor are both parties identify one party as a "surety," or the contract as a "suretyship" contract, the party so identified is a secondary obligor who is subject to a secondary obligation pursuant to which the secondary obligor is jointly and severally liable with the principal obligor to perform the obligation set forth in that contract

Restatement (Third) of Suretyship and Guaranty § 15(a) (1996).

Pennsylvania has, however, largely eliminated the distinction between a guaranty and a suretyship agreement; it has done so by mandating that, unless otherwise specified, every such contract is a contract of suretyship. *See* 8 P.S. § 1 ("Every written agreement hereafter made by one person to answer for the default of another shall subject such person to the liabilities of suretyship, and shall confer upon him the rights incident thereto, unless such agreement shall contain in substance the words: 'This is not intended to be a contract of suretyship,' or unless each portion of such agreement intended to modify the rights and liabilities of suretyship shall contain in substance the words: 'This portion of the agreement is not intended to impose the liability of suretyship'").

quotations and citations omitted). Rather, the "discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt[; thus,] . . . the debt still exists and can be collected from any other entity that might be liable." *Matter of Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993).

Moreover, the vast majority of courts who have confronted the issue have also held that, when a debtor's loan is restructured in bankruptcy, the restructuring of the loan neither releases the non-debtor surety nor "cures" the surety's own default.[14] For example, in *United States v. Stribling Flying Service, Inc.*, the Small Business Administration extended a loan to

_____

[14] Within the Guarantors' brief to this Court, the Guarantors continuously refer to the restructured Loan as a "new" loan. The Guarantors' characterization of the restructured Loan as a "new" loan is, however, contrary to the explicit terms of the Bankruptcy Court's Confirmation Order. Indeed, the Confirmation Order declares:

> ORDERED that the credit facility described in the Credit Agreement **is a modification and amendment of the Lender Secured Claim** pursuant to and as defined in the Plan **and is not in any way a new extension of credit**, an accord and satisfaction, or other arrangement that would impair in any way [Appellant's] right to assert claims against any non-Debtor party as to the Lender Secured Claim, nor would it or this Order impair in any way any non-Debtor's right to assert any defense thereto, including, without limitation, any defense relating to or arising from the modification and amendment of the Lender Secured Claim[.]

Confirmation Order, 10/4/11, at 8 (emphasis added).

- 23 -

a corporation, with payment for the loan secured by the unconditional personal guaranties of Donald and Frances Kimball. After the corporation defaulted on the note and the Kimballs defaulted on the guaranty, the United States agency accelerated the debt and then filed suit against the corporation and the Kimballs for breach of contract. *United States v. Stribling Flying Serv., Inc.*, 734 F.2d 221, 222-223 (5th Cir. 1984). The corporation filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code and the bankruptcy court confirmed the corporation's plan of reorganization, wherein the corporation's loan was restructured and the corporate debt owed on the note was reduced. *Id.*

Following confirmation of the corporation's plan, the Kimballs claimed in court that the confirmed bankruptcy plan had affected their own obligations as guarantors of the debt. Of relevance to the case at bar, the Kimballs claimed that "the confirmation of the plan cured the default on the previously accelerated corporate debt, so that their guaranties [now only] guarant[eed] the restructured and reduced debt" and that "the confirmation order act[ed] as collateral estoppel or *res judicata* as to any claim that might be brought . . . against the individual guarantors of the corporate debt." *Id.* The Fifth Circuit rejected both claims and held that the "the obligation[s] of . . . unconditional guarantors of [a] corporate obligation [are] not affected by confirmation of [a] reorganization plan by which the corporate debt was restructured and reduced." *Id.* at 223-224. Rather, the court held, a restructuring under the Bankruptcy Code "does not affect the responsibility

- 24 -

of the [corporation's] guarantors to make good on the unpaid portion of the guaranteed debts that remain after the arrangement is completed." ***Id.*** at 223 (internal quotations, citations, and corrections omitted). Thus, the court held that the Kimballs were liable for "the entire original corporate debt that was guaranteed by" them. ***Id.*** at 224.

Results similar to that reached by the ***Stribling Flying Service*** Court are found throughout the courts of the United States. ***See J & B Inv.'s, LLC v. Surti***, 258 S.W.3d 127, 130 (Tenn. Ct. App. 2007) (the confirmed plan declared that, if the debtor were to pay off its reduced and restructured debt, the debtor's default would be cured and the payment would be "in full satisfaction of the obligation owed to [the creditor]"; nevertheless, the court held that "the discharge of [the debtors] in bankruptcy did not alter the liability of the [g]uarantors"); ***Austin Hardwoods, Inc. v. Vanden Berghe***, 917 S.W.2d 320, 326 (Tex.App. 1995) ("modification of a corporate debt through a confirmed reorganization in bankruptcy does not constitute a material alteration of the underlying obligation so as to release a guarantor"); ***F.D.I.C. v. Lapierre***, 144 B.R. 581, 584 (D.Me. 1992) ("the fact that under the reorganization plan the debtor may have been relieved from the consequences of its default does not mean that a default does not exist"); ***R.I.D.C. Indus. Dev. Fund v. Snyder***, 539 F.2d 487, 492 (5th Cir. 1976) ("bankruptcy courts may have jurisdiction over secured creditors in Chapter XI proceedings and, if the debt owed the secured creditor is altered by a Chapter XI arrangement, the secured creditor's guarantee is insulated

by § 16 of the Bankruptcy Act [(which has been rewritten and codified at 11 U.S.C. § 524(e))]"); *In re Nine N. Church St.*, 82 F.2d 186 (9th Cir. 1936) ("By its guaranty, [the guarantor] promised to meet certain obligations and these are not affected by reorganization of this debtor. Any modification of [the debtor's contract with the creditor] can only be justified by the bankruptcy power which extends only to the relief of insolvent or hard pressed debtors. If [the guarantor] is in that class, it must come into court and establish the fact. It [cannot] modify its obligations by the reorganization of other insolvents").

We conclude that, if confronted with the issue, our Supreme Court would hold consistent with the above cases and declare that, when a debt or loan has been restructured in bankruptcy, the restructuring does not affect the liability of a non-debtor surety or guarantor. One reason for our conclusion is because, as a bankruptcy court has explained, "a discharge is an **involuntary release** by operation of law of asserted and non-asserted claims by a creditor against any entity who has filed a petition under the Bankruptcy Code and who has abided by its rules." *In re Yellowstone Mountain Club, LLC*, 460 B.R. 254, 268 n.4 (Bkrtcy.D.Mont. 2011) (emphasis added). Thus, since "[a] bankruptcy discharge arises by operation of federal bankruptcy law, not by contractual consent of the creditors[, a] creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings." *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 506

(Bkrtcy.D.N.J. 1997) (internal quotations, citations, and corrections omitted).

Further, any other result would cause our state courts to intrude upon federal bankruptcy law. Initially, if we were to hold that the restructuring of a loan under a bankruptcy plan **implicitly** released a non-debtor surety of its liability under a separate guaranty and suretyship agreement, our holding would very likely directly contravene 11 U.S.C. § 524(e). 11 U.S.C. § 524(e) (the "discharge of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt").[15]

Additionally, and as Appellant has rightly explained, if we were to hold that the loan restructuring in the case at bar released the Guarantors:

> No lender or creditor, whether they are the largest or smallest in a bankruptcy case, [would] negotiate with a bankruptcy debtor, let alone vote in favor of a plan, unless their guarantor participates in the bankruptcy and affirmatively "consents" to the deal. Imagine the leverage a guarantor and borrower could obtain in bankruptcy negotiations by having the guarantor threaten not to consent to plan modifications negotiated by the borrower and lender? A lender would be faced with a no-win situation of risking loss of its guaranty or ceding to the demands of its guarantor in exchange for consent.

_____

[15] Certainly, some courts and federal circuits hold that 11 U.S.C. § 524(e) prohibits a bankruptcy court from approving a reorganization plan that **explicitly and knowingly** releases claims against a non-debtor. **See In re W. Real Estate Fund, Inc.**, 922 F.2d 592 (10th Cir. 1990); **Matter of Zale Corp.**, 62 F.3d 746 (5th Cir. 1995); **In re Lowenschuss**, 67 F.3d 1394 (9th Cir. 1995).

Appellant's Brief at 3.

Such a result would greatly harm debtors and creditors alike and it would greatly impair a bankruptcy court's ability to restructure contracts as part of the reorganization process, at least where a non-debtor surety or guarantor exists. *See* 11 U.S.C. § 1123 ("a plan shall . . . provide adequate means for the plan's implementation, such as . . . curing or waiving of any default [and] extension of a maturity date or a change in an interest rate or other term of outstanding securities"); *see also* 11 U.S.C. § 1124 note ("Curing of the default and the assumption of the debt in accordance with its terms is an important reorganization technique for dealing with a particular class of claims, especially secured claims.")

Moreover, if we were to hold that a loan restructuring in bankruptcy affects the liability of a non-debtor surety or guarantor, we would encourage sharp practices in bankruptcy proceedings. Certainly, sureties and guarantors are often closely related to the borrower under the primary contract. Thus, if a borrower under the primary contract defaults and then declares bankruptcy, the borrower would have an incentive to restructure a loan under almost unachievable terms so that it could shield the guarantor from liability. Stated another way, even if the debtor-borrower has a belief that the terms of the loan will force it into liquidation, the debtor-borrower might still restructure its loan in such a manner, simply because it knows that the action will cure its individual surety or guarantor of liability under the suretyship or guaranty agreement.

Finally, any other result would destroy one of the primary purposes of having a surety or guarantor. Indeed, with respect to a guarantor, the Ninth Circuit has explained:

> By its guaranty, [the guarantor] promised to meet certain obligations and these are not affected by reorganization of this debtor. . . . To allow a guaranty to be modified every time the principal debtor found itself in financial difficulties would be to make a guarantor's obligation nominal only. The very purpose of, and only value in, a guaranty is as a protection against the principal's inability to pay. Without a reorganization of the guarantor and a showing that its financial conditions justify relief from its obligations, the contract between the obligees and the guarantor is inviolate.

*In re Nine N. Church St.*, 82 F.2d at 188.

In the case at bar, the Guarantors allegedly defaulted under the Guaranty and Suretyship Agreement in March 2010 – well before the underlying loan and credit facility were restructured, in bankruptcy, in October 2011. Further, and as a result of the alleged default, Appellant accelerated the Loan and declared the entire principal amount of the Loan and all interest, unpaid fees, and indebtedness to be "forthwith due and payable." Letter, 3/22/10, at 2; Appellant's Complaint, 10/4/10, at ¶ 26. It was at this point that the Guarantors became liable, under the Guaranty and Suretyship Agreement, for the entirety of their agreed upon indebtedness – and the Debtors' subsequent bankruptcy filing does not affect Appellant's ability to seek and obtain a judgment against the Guarantors for the alleged default.

Moreover, even though Appellant and the Debtors restructured their Loan in the bankruptcy proceedings, the restructured loan documents neither released the Guarantors from their already-established liability nor cured the Guarantor's default under the Guaranty and Suretyship Agreement. Indeed, both the Plan and the Confirmation Order declared that the Guarantors were **not** released as a result of the Debtors' discharge. The Plan, 9/27/11, at ¶ 9.8; Confirmation Order, 10/4/11, at 8-9.

Finally, our result is not changed by the mere fact that the Loan was restructured in documents that exist outside of the four corners of the Plan. To be sure, the Plan specifically declared that the execution and delivery of the Loan restructuring documents were a "condition precedent to the occurrence of the Effective Date" and that obligations under the restructured Loan documents were **incorporated into** the Plan. The Plan, 9/27/11, at ¶ 4.3.3(vii) and "Schedule A." Therefore, since the restructured Loan documents are a part of the Plan, the restructuring did not affect Appellant's liability under the Guaranty and Suretyship Agreement or cure Appellant's alleged default of that agreement.[16]

_____

[16] The Guarantors claim that Appellant entered into a voluntary settlement agreement with the Debtors and, in doing so, voluntarily altered the terms of the Loan documents. **See** the Guarantors' Brief, at 24; **see also In re Arrowmill Dev. Corp.**, 211 B.R. at 503-507 ("When a release of liability of a nondebtor is a consensual provision . . . , agreed to by the effected creditor, it is no different from any other settlement or contract and does not implicate 11 U.S.C. § 524(e). A voluntary, consensual release is not a discharge in bankruptcy"). According to the Guarantors, since Appellant
*(Footnote Continued Next Page)*

Hence, we vacate the trial court's order in part and remand for further proceedings.

Order vacated in part. Case remanded. Jurisdiction relinquished.

*(Footnote Continued)* ─────────────

"voluntarily agreed with the Debtors to extinguish the Debtor Liabilities under the Original Loan Documents and replace and substitute them with materially modified liabilities under the New Agreement," the Debtors were not "discharged" under the Bankruptcy Code. The Guarantors further claim that, as a result of Appellant's voluntary action, the Guarantors' obligations under the Guaranty and Suretyship Agreement have been extinguished. The Guarantors' Brief at 21; *see also **Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.***, 202 F.3d 223 (4th Cir. 2000) ("a release of the principal debtor by the creditor, by an absolute release of the debt, or by an obligatory extension of the time of payment, without the consent of the surety, releases the surety *in toto*. . . . [Therefore, when the debtors entered into a voluntary settlement with the creditor, releasing the debtors from the creditor's claims, the creditor's] release of [the debtors] bar[red] any claim against [the surety] . . . [b]ecause [the creditor] ha[d] no claim against [the debtors]").

The Guarantors' claim is incorrect, as the Plan demanded the execution and delivery of the Loan documents as a "condition precedent to the occurrence of the Effective Date," the Plan incorporated the obligations that were contained in the Loan restructuring agreements, and the Bankruptcy Court clearly **discharged** the Debtors pursuant to Section 1141(d)(1)(A) of the Bankruptcy Code. Thus, the restructured Loan documents do not constitute a "voluntary settlement" of Appellant's underlying claims against the Debtors. Rather, the restructured Loan documents are part and parcel of the Plan itself.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2014